Terry Colligan, a Minor, by Edward Colligan, His Father and Next Friend, Plaintiff-Appellant, v. Henry C. Cousar, et al., Defendants, Beatrice Schlegman, Elsie Reed, Chicago's Last Department Store, Inc., a Corporation, Frank Schaffer, Ben Simon, Morris Simon and Leo W. Klosek, Appellees.

Gen. No. 48,582.

First District, Third Division.

January 9, 1963.

Thompson, Lewin & Rafferty, of Chicago (Percival E. Thompson, of counsel), for appellant.

Morris, Liss, Arnold & Hennessey, Heineke, Conklin & Schrader, McKinley & Price, Robert L. Brody and George J. Gore, all of Chicago (Paul H. Heineke, and Roger A. Merletti, of counsel), for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from a judgment on the pleadings entered in the Circuit Court of Cook County in favor of the defendants and against the plaintiff. Suit was brought on behalf of Terry Colligan, a minor, for personal injuries sustained by him when he was struck by an automobile driven by an allegedly intoxicated person. The trial court entered judgment on the theory that the plaintiff had failed to state a cause of action in his complaint.

The plaintiff's amended complaint is in two counts. The cause of action alleged in count one is based on the

Illinois Dram Shop Act (Ill Rev Stats, c 43, § 135). It is alleged that the various defendants operated taverns on the far south side of Chicago at designated addresses. It is further alleged that on February 19, 1955 Henry C. Cousar and Virgil Young were sold or given liquors in these taverns and thereby became intoxicated, and as a result of such intoxication one of them, either Cousar or Young, while in a hopelessly intoxicated condition drove an automobile directly from one of the taverns across the Illinois state line and approximately 250 feet into the State of Indiana, where the said automobile hit 13-year-old Terry Colligan, seriously injuring him. Damages for the injuries are prayed.

Count two is a count in common law based on the same occurrence. In that count, besides the allegations contained in count one, it is further alleged that various defendants sold or gave to Cousar and Young intoxicating beverages on their premises, and continued thereafter to sell or give to Cousar and Young intoxicating beverages after the said parties had become intoxicated, and that "said latter sales or gifts were made carelessly and negligently or wilfully and wantonly, contrary to and in violation of a certain statute of the State of Illinois then and there in full force and effect, known as Section 131 of Chapter 43, Illinois Revised Statutes, 1955, which provided and provides in part as follows:

> " 'No licensee nor any officer, associate, member, representative, agent or employee of such licensee shall sell, give or deliver alcoholic liquor to any . . . intoxicated person . . . .' "

In another paragraph of the count there is the following allegation:

> "That as to the latter sales or gifts set forth in the preceding paragraph, the plaintiff alleges that

395

such sales or gifts were not only made contrary to and in violation of the law but were made either with an intention or a reckless disregard of the consequences of such sales or gifts."

It is also alleged that Terry Colligan was not guilty of contributory negligence, and that, "as a direct and proximate result of being in a hopelessly and helplessly intoxicated condition as a consequence of having consumed alcoholic beverages after they were already drunk," Cousar and Young, or one of them, drove an automobile and thereby caused the injuries to Terry Colligan, and damages are prayed.

The defendants filed answers to both counts and joined in a motion for judgment on the pleadings, based upon the contention, as to count one, that under the Dram Shop Act the plaintiff cannot bring an action against the defendants since the plaintiff was injured in Indiana, and as to count two, that "neither the common law nor Section 131 afford plaintiff a cause of action against these defendants because Section 135, Chapter 43, Illinois Revised Statutes provides the only remedy against tavern operators for injuries to person by an intoxicated person." In support of the motion defendants cite Cunningham v. Brown, 22 Ill2d 23, 174 NE2d 153, and Knierim v. Izzo, 22 Ill2d 73, 174 NE2d 157.

The court on June 15, 1961 sustained defendants' motion for judgment on the pleadings and ordered that the action be dismissed and that the defendants and each of them go hence without day. From that judgment the plaintiff has taken this appeal.

█ In support of the judgment of the court holding that count one of the complaint does not state a cause of action, Eldridge v. Don Beachcomber, Inc., 342 Ill App 151, 95 NE2d 512, is controlling. In that case the defendant sold or gave intoxicating liquors to one Slaughter in Chicago, Illinois, causing him to

become intoxicated and causing injury to a passenger in his car when it collided with a truck in Indiana. The complaint was dismissed in the trial court. In the opinion the court states that the sole issue is whether or not the Dram Shop Act of the State of Illinois gives rise to a cause of action where the intoxication occurs in Illinois and the resulting accident occurs in another State. The court considers the case as one of first impression in Illinois. It discusses cases decided in other jurisdictions and reaches the conclusion that the statute should not be given extraterritorial effect. Petition for leave to appeal was filed and was denied by the Supreme Court. Under those facts the decision in the Eldridge case is stare decisis and is binding on this court. The same result was reached in Butler v. Wittland, 18 Ill App2d 578, 153 NE2d 106, the court in that case citing and relying on the Eldridge case.

The result reached in the Eldridge case has been severely criticized. Baylor Law Review, vol XII, p 388, discusses the rules laid down in various jurisdictions with reference to this matter. In 1958 Ill Law Forum, No 2, p 287, attention is called to Schmidt v. Driscoll Hotel, 249 Minn 376, 82 NW2d 365, in which the court reaches a result contrary to that reached in the Eldridge case, and holds that the Minnesota Dram Shop Act may be given extraterritorial application. In Coffey v. ABC Liquor Stores, 13 Ill App2d 510, 142 NE2d 705, the court held that the tavern keeper was not entitled to indemnity in a third-party action against the intoxicated person who did the injurious act for which the tavern keeper was allegedly liable. It was held that indemnity, contribution or subrogation is limited to an innocent party and that the tavern keeper was not innocent but was a joint tortfeasor, citing Buckworth v. Crawford, 24 Ill App 603, as having held that the sale of intoxicants which contributed

397

to or caused intoxication was tortious, and the court further said: "By the Dramshop Act the Legislature has expressed the public policy of our State. In our opinion the allowance of the claim for indemnification sought herein would violate the policy so expressed." The article in the Law Forum also states: "Traditional rules of statutory construction, as well as the conflicts rules of tort law, are for the most part in harmony with the Eldridge case. Whether the Illinois courts will break away from the result of that case will depend on whether they are more interested in a uniform statutory coverage and a furtherance of the policy which motivated the Dram Shop Act than they are in strict conformity to rules which were not made to fit the peculiarities of the Dram Shop Act."

In Zucker v. Vogt, 200 F Supp 340, the court held that the administrator of the estate of a New York motorist, who had died following a collision of his automobile in New York with that of an intoxicated driver who had been served liquor in Connecticut, could maintain a diversity action in the federal court against the owner of the Connecticut restaurant at which the liquor was served, based on violation of a Connecticut Dram Shop Act. It refers to the rule laid down by the New York courts that those courts would not give extraterritorial effect to the New York Dram Shop Act, citing Goodwin v. Young, 34 Hun 252. That case was cited and approved in the Eldridge case. In the Zucker case the court bases its decision upon the statement made by the Connecticut court in Pierce v. Albanese, 144 Conn 241, 129 A2d 606: "Because of the danger to the public health and welfare inherent in the liquor traffic, the police power to regulate and control it runs broad and deep . . . . The multitude of automobiles on the public highways enhance the danger. . . . The obvious purpose of the legislation is to aid the enforcement of § 4293 . . . and to protect the public." It also cites Osborn v.

Borchetta, 20 Conn Supp 163, 129 A2d 238, in which the court held, in an action against a New York liquor dealer for a sale of liquor in New York which resulted in injuries in Connecticut, that a cause of action based on the New York Dram Shop Act would be sustainable in a Connecticut court. In reliance on those decisions the court in the Zucker case held that the highest courts of Connecticut would hold that the plaintiff could recover damages for injuries sustained as a result of a violation by the defendant of the provisions of the Connecticut Dram Shop Act, even though the collision resulting in the injuries had occurred in New York.

In Nudd v. Matsoukas, 6 Ill App2d 504, 128 NE2d 609, we had before us a case in which two issues were presented: (1) Can the administrator of an estate maintain a suit for tort under the Wrongful Death Act when one of the surviving next of kin is made a principal party defendant? (2) Can a minor sue his father for wilful and wanton misconduct? In that case we held that we were governed by the previous cases in Illinois. We pointed out that in other jurisdictions there were cases which indicated judicial dissatisfaction with the rule as announced in Illinois, and in that case we further held that the question was a question of public policy and hence should be determined by the legislature. In the instant case it is also argued from the fact that after the decision in the Eldridge case the legislature amended the Dram Shop Act and since it did not specifically grant extraterritorial operation to the law it must be assumed that the legislature approved the holding in that case. The Supreme Court on petition for leave to appeal in the Nudd case granted leave to appeal, and rendered a decision (Nudd v. Matsoukas, 7 Ill 2d 608, 131 NE2d 525) reversing our judgment and the previous holdings of the Supreme Court. The Supreme Court said:

■

"We are indeed treading on dangerous ground when we purport to judge the judicial soundness of our prior opinions by the presence or absence of corrective legislation. (Cf. Helvering v. Hallock, 309 US 106.) . . .

"It is also urged that such a far-reaching change is a matter for the legislature, but this ignores the fact that the courts and not the legislature imposed the restriction upon the action for wrongful death. Stare decisis is an important factor in the judicial process, but we must not forget that it is not the whole process. (Cardozo, Selected Writings, pp 16–17,) As we recognized in Doggett v. North American Life Ins. Co., 396 Ill 354, at page 360: 'While adherence to the doctrine of stare decisis is important to the stability of the law, yet when doubts are raised in the minds of the court as to the correctness of its decision, it is its duty to re-examine the questions involved in the case.' Other courts have not been reluctant to reverse their prior decisions in holding that the negligence of one beneficiary is not a bar to a wrongful death action. . . .

"We have, accordingly, determined that the conclusion reached in Hazel v. Hoopeston-Danville Bus Co., 310 Ill 38, was not required by statute nor by any recognized rules of common law. . . ."

The court further stated that insofar as the latter case and other cases cited are inconsistent with its decision they are overruled.

In the present state of the law this court is bound by the decision in the Eldridge case, and under that rule the trial court committed no error in entering judgment on the pleadings in favor of the defendants on the cause of action based on count one of the complaint.

■ The plaintiff argues that the second count should have been held to state a common-law action

400

against the defendants who are alleged to have sold or given alcoholic liquor to Cousar and Young in Illinois and who subsequently, while intoxicated, drove a car in Indiana where the accident occurred.

The second count could properly be interpreted as stating a cause of action in tort based either on a duty imposed upon the defendants by section 12 of article VI of the Liquor Control Act (chap 43, par 131), which provided that no licensee should sell or give alcoholic liquor to an intoxicated person, and that they violated that duty and consequently their violation was the proximate cause of the injury to the plaintiff, or, without considering the statute, on a duty imposed on every person not to do an act the consequences of which were known to him or could reasonably be anticipated, and which resulted in harm to another, in other words, that when the defendants gave intoxicating liquor to an already intoxicated person they were acting either with knowledge or with a reckless disregard of the foreseeable consequence of such sales or gifts.

■ The first question that must necessarily be determined is what law is to be applied by the Illinois court in the instant suit. It previously has been held that the lex loci delicti should be applied, that is, where an action is brought in Illinois for a tort committed in another State the substantive law of the latter State will be applied by the Illinois court. Butler v. Wittland, 18 Ill App2d 578, 153 NE2d 106; Waynick v. Chicago's Last Dept. Store, 269 F2d 322 (7th Cir); Opp v. Pryor, 294 Ill 538, 128 NE 580; Mithen v. Jeffery, 259 Ill 372, 102 NE 778. Hence it is the duty of the Illinois court to determine what the common-law rule existing in Indiana was with regard to the facts and circumstances disclosed by the pleadings in the instant case.

The plaintiff cites and quotes from the case of Dunlap v. Wagner, 85 Ind 529, which was a case where

the defendant, not licensed as a retail liquor dealer, illegally sold Dunlap liquor on a Sunday, which liquor caused Dunlap's intoxication. After Dunlap was intoxicated the defendant placed him in a sleigh and started the horses toward Dunlap's home. The horses ran away, and one of the horses received injuries which caused its death. In that case the court states:

> "He [defendant] was, therefore, a wrong-doer, and wrong-doers are responsible for injuries proximately resulting from their wrongful acts. A man who, in violation of law makes another helplessly drunk, and then places him in a situation where his drunken condition is likely to bring harm to himself or injury to others, may well be deemed guilty of an actionable wrong independently of any statute."

This statement by the court is dictum inasmuch as the court decides the case on an Indiana Dram Shop Act which was then in effect in the State. That Act is no longer the law in Indiana. Consequently it may be said there has been no rule of common law with reference to this particular question set out in any authoritative statements of the Indiana courts.

In 15 CJS Conflict of Laws, sec 3, it is pointed out that in many cases it has been held that the law of the forum would be applied when the applicable foreign law has not been proved, and that it is presumed that the foreign law is the same as that of the forum. (See also Crane v. Blackman, 126 Ill App 631, 635; Tinkler v. Cox, 68 Ill 119; Shannon v. Wolf, 173 Ill 253, 260, 50 NE 682, 684–5; Woodbury v. United States Cas. Co., 284 Ill 227, 120 NE 8; Opp v. Pryor, 294 Ill 538, 128 NE 580.) It is further pointed out this presumption will be adhered to even though there is a statute changing the common law of the forum. The text in Corpus Juris Secundum further quotes from

Goodrich, Conflict of Laws, 2nd ed, pp 195-7, stating: " 'If there is a statute changing the lex fori, the presumption will be that the foreign law is the same as that of the forum before the statutory change was made.' " In other words, the court should determine what the common law of the State would be had there been no statute abrogating the common law of the forum. In Crane v. Blackman, supra, the court states that the common law is to be determined, not by a statute passed in the forum, but by the common law which would have existed had there been no statute in effect.

█ In our finding with reference to count one of the complaint we held that the Dram Shop Act of Illinois had no extraterritorial operation and hence was not controlling in Indiana, the place where the accident occurred. We must then determine and apply the Illinois common law.

Our courts have held that where the liquor has been sold, the injury sustained, and the suit brought in Illinois, the Dram Shop Act provides the only remedy against tavern operators and owners where a person is injured by an intoxicated person or in consequence of intoxication. In Cunningham v. Brown, 22 Ill2d 23, 174 NE2d 153, an action was brought in three counts by an administratrix and widow suing for damages caused to her and her children on the ground that the decedent was served intoxicating liquors by the defendants, became despondent and took his life, as a result of such intoxication. Counts one and two were based on a violation of the Dram Shop Act. Count three was based on a common-law theory of liability. The only count that we are concerned with is count three. The court in a very well reasoned opinion says:

"The substantive issue in this case is one of first impression before this court. No case has

403

been cited by the plaintiffs nor have we found one where, prior to the enactment of the original Dram Shop Act of 1872, (Laws of 1871–72, pp 552–56,) recovery was sought from a supplier of alcoholic liquor for damages inflicted by an intoxicated person or resulting from the intoxication. After the passage of that act and its subsequent amendments all actions against tavern owners were brought under the statute."

The court discusses fully the history of the Dram Shop Act and holds that that Act provides the only civil remedy against a seller of intoxicating liquors in Illinois. The court further says:

"This brings us to the question of whether we should recognize a common-law remedy in addition to the remedy provided in section 14. The plaintiffs concede that the common law provided no remedy for the mere sale of alcoholic liquor to the ordinary man, either on the theory that it was a direct wrong or on the ground that it was negligence, which imposes a legal liability on the seller for damages resulting from intoxication. . . . [Citing cases.] They point out that the reason generally given for the rule is that the drinking, not the selling, is the proximate cause of the intoxication. (See, e. g., Cole v. Rush, 45 Cal2d 345; Joyce v. Hatfield, 197 Md 249.) They argue however that where a sale is made to one who is intoxicated or insane and the incapacity of the consumer to choose is known to the vendor, or should be known, then the sale and consumption are merged and in reality become the act of the seller and the proximate cause of the intoxication.

"The plaintiffs' argument has some merit, and if no more were involved than laying down a new

404

rule of liability it would warrant more serious consideration."

The court further holds that that remedy, if recognized, would be coincidental with the remedy provided in the Dram Shop Act and the constitution does not require the courts to recognize a remedy where the legislature has already provided for the contingency. The court holds that since the enactment of the Dram Shop Act there is no common-law right of action in Illinois. The same holding with reference to the Dram Shop Act pre-empting the field of civil remedies for injuries caused by an intoxicated person is laid down in Knierim v. Izzo, 22 Ill2d 73, 174 NE2d 157.

It is incumbent upon this court to determine what the common law of Illinois would be had there been no Dram Shop Act in existence. We have no decision directly in point on this question.

█ It has been held that the "common law" does not consist of absolute, fixed and inflexible rules, but broad and comprehensive principles based on justice, reason and common sense, and is of judicial origin and promulgation; and its principles are susceptible of adapting to new conditions, interests and usages as the progress of society may require. Miller v. Monsen, 228 Minn 400, 37 NW2d 543; Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 128 F2d 645, 648 (4th Cir). In Scott v. Kirtley, 113 Fla 637, 152 So 721, 93 ALR 661, it is stated that the common law is but the crystallized conclusion of judges arrived at by applying the principles of natural right and justice to facts actually experienced in cases before them. The Illinois Supreme Court has always taken a forward look in the development of the common law.

In Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74, the court decided, where an owner of a parked car leaves his keys in it and subsequently a third person takes the car and while driving it injures another

405

person, that the act of the owner of the car in negligently leaving his keys in the car was a proximate cause of the injury and gave rise to a cause of action. The court stated (pp 81–82):

"The common law has established itself in the history of jurisprudence because of its flexibility in its recognition of and adaptation to changing times and mores; and, as adopted by our legislature, 'is a system of elementary rules and of general declarations of principles, which are continually expanding with the progress of society, adapting themselves to the gradual changes of trade, commerce, arts, inventions and the exigencies and usages of the country.' (Amann v. Faidy, 415 Ill 422; Kreitz v. Behrensmeyer, 149 Ill 496.) The increase in population and number of motor vehicles owned and operated in this country in the past few years is well known. The increase of casualties from traffic accidents is a matter of common knowledge and concern. The incidents of automobile thefts and damages and injuries resulting from such larcenous escapades has accordingly increased. Juvenile delinquency has reached proportions alarming to everyone. Three major wars during the lifetime of this generation have had their effect upon the mental attitudes, not only upon those who endured the physical suffering and mental anguish, but upon all our society. Comparative regard and disregard for the rights and property of others have not been unaffected. Automobiles, once considered a luxury, are now considered by many to be a necessity. The man who once walked a mile now drives a block. The speed and power of automobiles have increased to the extent that safety experts are now showing keen awareness of their potentials even in the hands of rightful

owners and careful operators. Incidents of serious havoc caused by runaway thieves or irresponsible juveniles in stolen or 'borrowed' motor vehicles frequently shock the readers of the daily press. . . .

"Justice requires that we do more than honor and respect prior judicial decisions, for if only these two considerations were our guideposts then the path of jurisprudence would never change irrespective of a changing world."

A very illuminating decision concerning the elements necessary to determine a common-law rule is found in Johnson v. Luhman, 330 Ill App 598, 71 NE 2d 810, where Mr. Justice Bristow points out that the issue of whether minor children can recover damages from one who has enticed their father away from home and deprived them of his support and society has never been determined by the Illinois courts. The court first discusses the decisions of other jurisdictions. The court cites and quotes from Daily v. Parker, 152 F2d 174, and with respect to that case the court states:

"In the course of this analysis the court embraced the philosophy of judicial empiricism, expounded by Dean Pound in, 'The Spirit of the Common Law,' whereby courts should interpret the common law as sufficiently elastic to meet changing conditions, even though that process is tantamount to law-making by judicial decision.

"In this vein Judge Evans stated unequivocally at p 177; 'Because such rights have not heretofore been recognized is not a conclusive reason for denying them.' "

Mr. Justice Bristow says, after discussing various comments upon that decision:

407

"It is the opinion of this court, however, that the frank recognition by the circuit court of appeals that the cause was without precedent, but that, nevertheless, the common law was sufficiently flexible to protect what are presently regarded as family rights under our social standards and conceptions of the family unit, is more conducive to the development of unambiguous legal precepts, than if the court had invoked some legal fiction to accomplish what it deemed to be a desirable result."

The court also quotes from Cardozo's Growth of the Law, stating:

" 'The judge fills the open space in the law . . . Within the confines of these open spaces and those of precedent and tradition choice moves with a freedom which stamps its action as creative. The law which is the resulting product is not found but made. . . . I have grown to see that the "judicial" process in its highest reaches is not discovery but creation.' "

The court holds that the minor children in the case before it properly had a right to protect their relationship with their parents and were properly entitled to seek damages from one who has destroyed the family unit, saying: ". . . it is the opinion of this court that a frank recognition of the changes within the family unit, which has now become a cooperative enterprise, makes it apparent that much of the ancient law of domestic relations is anachronistic."

In Waynick v. Chicago's Last Dept. Store, 269 F2d 322 (7th Cir), the court was faced with a case similar to the instant one. This was a diversity action for damages brought by plaintiffs who alleged that the defendants had furnished intoxicating liquors in the

408

State of Illinois to the owner and driver of a certain automobile, and that these liquors were furnished at the time when the owner and driver were intoxicated. Subsequently their car collided in the State of Michigan with an automobile in which the plaintiffs were riding, causing the injuries for which the suit was brought. In that case it was argued that there was no common-law liability and that it had been held in the State of Illinois that the Dram Shop Act pre-empted the field. The court criticizes the rule laid down in the Eldridge case that the Illinois Dram Shop Act does not apply extraterritorially. It also holds that the Michigan Liquor Control Act is not applicable where a sale of intoxicating liquors in Illinois produces injuries in Michigan. The court holds that it will apply the common law of Michigan to the case. It quotes from Stout v. Keyes, 2 Doug Mich 184, 43 Am Dec 465, at 467, where the court held that the common law generally applied in Michigan, and states: " '. . . [It is] a general principle of the common law, that whenever the law gives a right, or prohibits an injury, it also gives a remedy by action; . . . .' " The court also holds that the sale of the liquor to the intoxicated person in the State of Illinois was unlawful because it violated section 12 of article VI of the Illinois Liquor Control Act (chap 43, par 131), and it quotes from 130 ALR 357:

" 'While it is true that ordinarily a vendor of intoxicating liquors is not, at common law, answerable to a third person for injury or damage sustained by the latter as a result of the intoxication of the purchaser of the liquor, nevertheless it is established that in some circumstances a vendor's sale of liquor may constitute a wilful violation of his duty to one other than the consumer thereof and be the proximate cause of the

409

injury sustained by such third person, so that for such injury the latter may have a right of action at common law against the vendor.' "

The court further states:

"It is apparent in the case at bar that there are circumstances which make the sales of liquor to Sims and Owens wilful violations of § 131. These circumstances were not usual sales to adults or ordinary men. They were sales to intoxicated persons. They were not sales to 'a strong and able bodied man', as referred to in Manthei v. Heimerdinger, 332 Ill App 335, 352, 75 NE2d 132, 140, relied on by defendants."

The court holds that an essential element in a tort action is the existence of a duty either imposed by statute or otherwise in favor of the party injured and on the party who produces the injury, citing 86 CJS Torts, sec 6, p 926. It also holds that the Illinois Act making unlawful a sale of alcoholic liquors to any intoxicated person is for the protection of any member of the public who might be injured or damaged as a result of the drunkenness to which a particular sale of alcoholic liquor contributes, and that the plaintiffs there were entitled to the protection given by section 12 of article VI of the Illinois Act, and that under the common law the tavern keepers were liable in tort for the damages and injuries sustained by the plaintiffs as a proximate result of the unlawful acts of the former.

In 30 Am Jur Intoxicating Liquors, sec 520, it is said:

"At common law it is not a tort to either sell or give intoxicating liquor to ordinary able-bodied men, and it has been frequently held that, in the absence of statute, there can be no cause

410

of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished. The reason usually given for this rule is that the drinking of the liquor is the proximate cause of the injury, not the furnishing of it. However, the common-law rule is generally qualified to the extent of giving a right of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished, where the liquor was given or sold to a person who was in such a condition as to be deprived of his will power or responsibility for his behavior, or to a habitual drunkard, or in violation of a prohibitory statute. . . ."

In the 1962 cumulative supplement to 30 Am Jur the following note was added to section 521:

"It is established that in some circumstances a vendor's sale of liquor may constitute a wilful violation of his duty to one other than the consumer thereof and be the proximate cause of the injury sustained by such third person, so that for such injury the latter may have a right of action at common law against the vendor."

The note cites 75 ALR2d 837; Rappaport v. Nichols, 31 NJ 188, 156 A2d 1, 75 ALR2d 821; Waynick v. Chicago's Last Dept. Store, supra. Also see Baylor Law Rev, vol XII, p 388 (1960), which contains a review of the holdings of the various jurisdictions in the United States on this question. The decisions are not all in accord.

Rappaport v. Nichols, supra, was a case where tavern owners sold a minor intoxicating liquor in violation of a statute, and it was alleged that the intoxicated minor negligently drove a car which collided with plaintiff's car, killing its driver in the collision. Plaintiff brought suit for damages on common-law

negligence against the four tavern owners. In reversing a summary judgment entered by the trial court in favor of the tavern operators, the reviewing court based its decision on the ground that all of the elements of actionable negligence under common-law concepts were presented by the complaint, and in rejecting the trial court's decision that there was no proximate cause due to the fact that the plaintiff's injuries were not reasonably foreseeable, the court said:

"Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor. . . .

"When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person the unreasonable risk of harm not only to the minor or the intoxicated person, but also to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current times when traveling by car to and from the tavern is so common-place and accidents resulting from drinking are so frequent."

In addition to the Rappaport case the same holding is made in Manning v. Yokas, 389 Pa 136, 132 A2d 198, and McKinney v. Foster, 391 Pa 221, 137 A2d 502.

In Ney v. Yellow Cab Co., supra, the court discusses the question of primary cause and says (p 79):

"The injury must have a direct and proximate connection with the violation of the statute before liability will be held to exist. It is the existence of this cause and effect relationship which makes the negligence of the defendant actionable.

412

"Where an independent agency intervenes, the solution of the problem becomes aggravated. The rules are without substantial contradiction and are universally applicable, but their practical application yields varying and contradictory results. In Neering v. Illinois Central Railroad Co., 383 Ill 366, we stated: 'What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act.' In Johnston v. City of East Moline, 405 Ill 460, we declared: 'An intervening and efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. [Citations.] The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was, itself, probable or foreseeable. [Citations.]' "

The Indiana cases on proximate cause are in accord with this rule. In Phares v. Carr, 122 Ind App 597, 106 NE2d 242, the Indiana court says:

"Reasonable foreseeability is the fundamental test of proximate cause. This rule is not changed by the fact of an intervening act or agency. See 65 CJS, Negligence, § 264(b), p 1189. Also, it has been stated that proximate cause is a question for the court only when the facts are plain

413

and undisputable, but if there is some reasonable doubt as to the proximate cause of an injury, it is a question for the jury. . . ."

See also Northern Indiana Transit v. Burk, 228 Ind 162, 89 NE2d 905, 911; Tate v. West, 120 Ind App 519, 94 NE2d 371, 376.

The complaint in the instant case alleged that the defendants operated taverns at designated addresses on the far south side of Chicago. This court can take judicial notice that the location of those taverns was in close proximity to the Illinois state line. The complaint further alleges that the defendants gave or sold intoxicating beverages to Cousar and Young on their premises, after the parties had become intoxicated, either in violation of a duty imposed by section 12 of article VI of the Illinois Liquor Control Act or in violation of their common law duty. Under those circumstances we hold that the acts of the defendants in furnishing the intoxicating liquors to the tortfeasors were acts which, had there been no Dram Shop Act in existence in the State of Illinois, would give rise to a common law cause of action in this State on behalf of the plaintiff allegedly subsequently injured by the acts of the said tortfeasors as a result of their intoxicated condition. We must presume that the common law of Indiana, where the accident occurred, was the same as the common law of Illinois. The genius of the common law is that it is constantly expanding to meet new and unique conditions. The spirit of the common law is not dead. It lives and grows as conditions warrant. As we have said, we are now determining what the common law of Illinois would be if the Dram Shop Act had not been in full force and effect in the State. Having in mind the statements of our Supreme Court in the Cunningham case, supra, it is our considered opinion, under those circumstances and the facts alleged in

the complaint, that a common law cause of action exists, and that the trial court erred in entering judgment for the defendants on the second count of the complaint.

The judgment of the Circuit Court of Cook County is affirmed insofar as it entered judgment for defendants as to count one and dismissed the action as to said count. The judgment is reversed insofar as it entered judgment for defendants as to count two and dismissed the action as to said count two, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Affirmed in part; reversed in part and cause remanded.

DEMPSEY, P. J. and SCHWARTZ, J., concur.