GARCIA (Gloria), Plaintiff and Appellant, v. HARGROVE and another, Defendants and Third-Party Plaintiffs: URSO, d/b/a URSO'S SATELLITE LOUNGE, Defendant and Respondent: GARCIA (Roberto), Third-Party Defendant.

No. 205.  Argued April 1, 1970.—Decided May 1, 1970.
(Also reported in 176 N. W. 2d 566.)

For the appellant there was a brief and oral argument by *Richard A. Heilprin* of Madison.

For the respondent there was a brief and oral argument by *Robert J. Mueller* of Madison.

A brief amicus curiae was filed by *Paul E. Jorgensen* of Racine, attorney, and *Ray T. McCann* of Milwaukee, of counsel, for the Tavern League of Wisconsin, Inc.

A brief amicus curiae was filed by *Fox & Hack* of Milwaukee, for the Wisconsin Restaurant Association and the Wisconsin State Hotel Association.

A brief amicus curiae was filed by *Everett J. Stats* of Milwaukee, for the Wisconsin State Brewers Association.

A brief amicus curiae was filed by *Schetter & Burbach*, attorneys, and *Jerome E. Randall* of counsel, all of

Milwaukee, for the Wisconsin Tavern Keepers Association.

A brief amicus curiae was filed by *Kaftan, Kaftan, Kaftan & Kuehne* of Green Bay.

CONNOR T. HANSEN, J. The issue on this appeal is whether this court is now going to abrogate the common-law rule that it is not a tort to sell intoxicating liquor to able-bodied men, reverse prior case law of this court founded on this rule, and now hold that a seller of intoxicating liquor can be found liable, under principles of common-law negligence. We look upon this as a policy decision and we are not persuaded to reverse the position previously taken by this court.

The common-law rule referred to is set forth in 48 C. J. S., *Intoxicating Liquors,* p. 716, sec. 430:

"At common law, and apart from statute, no redress exists against persons selling, giving, or furnishing intoxicating liquor, or their sureties, for resulting injuries or damages due to the acts of intoxicated persons, whether on the theory that the dispensing of the liquor constitutes a direct wrong or constitutes actionable negligence, and, there being no remedy in favor of the person injured, no remedy may be asserted by his surviving spouse. This rule is based on the theory that the proximate cause of the injury is the act of the purchaser in drinking the liquor and not the act of the vendor in selling it. . . ."

*See* 45 Am. Jur. 2d, *Intoxicating Liquors,* p. 852, sec. 552.

Plaintiff concedes the law of this state bars her cause of action since there is no common-law liability with respect to vendors of intoxicating liquors. *Dillon v. Linder* (1874), 36 Wis. 344; *Demge v. Feierstein* (1936), 222 Wis. 199, 268 N. W. 210; *Seibel v. Leach* (1939), 233 Wis. 66, 288 N. W. 774; *Farmers Mut. Automobile Ins. Co. v. Gast* (1962), 17 Wis. 2d 344, 117 N. W. 2d 347.

The present Wisconsin law was stated in *Seibel v. Leach, supra,* at 67, 68:

"The injury to the plaintiff was the result of an act of the defendant Leach, and the responsibility for that act under the law is not visited upon Landerman or his surety. Under the common law it is not an actionable wrong either to sell or to give intoxicating liquors to an able-bodied man. . ."

". . . Courts may in proper instances apply old rules to newly created conditions, but they cannot create new rules for conditions already regulated. The common-law rule holds the man who drank the liquor liable, and considers the act of selling it as too remote to be a proximate cause of an injury caused by the negligent act of the purchaser of the drink. The decision in *Demge v. Feierstein, supra,* sets forth the law controlling in the case at bar."

In *Farmers Mut. Automobile Ins. Co. v. Gast, supra,* this court reaffirmed the decisions of *Demge* and *Seibel* and said that to hold plaintiff's complaint stated a cause of action in common-law negligence would require the overruling of previous decisions which this court then declined to do. So to the decisions of *Dillon v. Linder, supra, Demge v. Feierstein, supra,* and *Seibel v. Leach, supra,* is added the recent decision of *Gast.*

The plaintiff suggests that in *Farmers Mut. Automobile Ins. Co. v. Gast, supra,* this court indicated a willingness to change the rule adhered to in *Seibel.* We do not take issue with this observation. In *Gast* the action was brought by an automobile liability insurer against the vendor for damages paid in settlement of a claim for injuries received by a third person in an automobile accident in which the intoxicated minor was driving the insured's automobile. In effect, the claim of the insurance carrier was in the nature of subrogation. Regardless of who might receive the money, the facts giving rise to the damages in *Gast* present a stronger case for abandoning the common-law rule than do the facts in the present case. In *Gast,* the defendant vendor

had sold the intoxicating liquor to the minor and was subsequently convicted of this statutory offense, while in this case liability would be premised on the fact defendant and his agents knew or should have known that serving Roberto Garcia would make him unfit and incompetent to safely operate a motor vehicle.

Counsel for both parties and the several briefs of amicus curiae have presented a most helpful review of the recent case law throughout the country. We have examined and considered the authorities cited. The landmark cases in which states have abrogated the common-law rule are *Waynick v. Chicago's Last Department Store* (7th Cir. 1959), 269 Fed. 2d 322, 77 A. L. R. 2d 1260; *Rappaport v. Nichols* (1959), 31 N. J. 188, 156 Atl. 2d 1. Both of these cases were decided prior to *Farmers Mut. Automobile Ins. Co. v. Gast, supra.* Although *Gast* indicates approval of the rationale in *Rappaport,* it was found not to be sufficiently persuasive to result in overruling the previous decisions of this court. Since *Waynick* and *Rappaport,* several states have developed their case law on the rationale of those cases and a lesser number of states have decided to abide by the common-law rule.

In considering the case law of other states it is difficult to make a comparable analysis with the situation we find in Wisconsin. Some have dram shop laws, in some they have been repealed, others have never had them, and we find a variety of civil damage statutes. To the best of our knowledge none have comparative negligence. In some states, the problem is considered and deferred to the legislature, and many approach from the standpoint of "proximate cause." Whatever choice we make for Wisconsin is supportable by case authority elsewhere. *See* 75 A. L. R. 2d 833, 73–78 A. L. R. 2d Later Case Service (1968).

The rationale of the common law, *i.e.,* that the drinking was the proximate cause of injury, not the sale, was the basis for the holding in *Seibel;* however, as pointed out in *Gast,* this reasoning has been heavily criticized.

"It may be urged that apart from statute the vendor should be held responsible, if found negligent, under the theories expressed by the court itself in its opinion. The particular precedents mentioned which were developed in the horse and buggy days are not controlling today. It is well settled negligence law that one who acts must do so with reasonable care. The grave danger connected with the operation of automobiles by drunken drivers under modern traffic conditions is a matter of common knowledge. The vital point of inquiry would seem to be whether the vendor knew or ought to have known that the vendee would drive on the public highways in an intoxicated condition. If he has such actual or constructive knowledge, it would seem that we have strong, if not conclusive, evidence of negligence. It would require a gross distortion of public policy to limit this liability by the proximate cause doctrine. . . ." Campbell, *Work of the Supreme Court*, 1941 Wisconsin Law Review, 110, 117.

In addition, this court, subsequent to *Seibel* removed the element of foreseeability from causation and grounded that element of negligence entirely upon the acts complained of being a substantial factor in causing the harm.

"If it be kept in mind that foreseeability under our law as it now stands applies only to the question of negligence or the failure to exercise ordinary care, and not to limit the liability for the consequences of the wrongful act, much confusion should be done away with. . . ." *Osborne v. Montgomery* (1931), 203 Wis. 223, 242, 234 N. W. 372.

"The effect of the decision in *E. L. Chester Co. v. Wisconsin Power & Light Co.*, *supra*, is to hold that, in submitting the ordinary or 'mine run' type of negligence case, the jury should be asked to determine whether the party charged with negligence should have reasonably anticipated some injury to the interests of others might result from the alleged negligent act, while in the unusual or 'hard' case the inquiry as to reasonable anticipation should be limited to the particular type of injury which actually occurred. We no longer consider this to be the proper solution of the problem presented by

the unusual case in which the injury suffered is a remote or unusual result of the act claimed to be negligent. It would seem to be preferable to submit these hard cases to the jury in so far as determining the issues of negligence and causation in the same manner as in the ordinary case. If the jury does determine that there was negligence, and that such negligence was a substantial factor in producing the injury, it is then for the court to decide as a matter of law whether or not considerations of public policy require that there be no liability. As previously pointed out, this latter solution is the one advanced in *Osborne v. Montgomery, supra,* and we adhere thereto. It is also in accord with the views expressed by Professor Campbell in his article in 1938 Wisconsin Law Review, 402, and with Restatement, 2 Torts (1948 Supp.), p. 739, sec. 435, 2, comment *e,* thereunder." *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 240, 55 N. W. 2d 29.

Thus, although cases still follow the rule of nonliability, they are of little persuasion in this state when predicated on the "proximate cause" of plaintiff's injuries being the consumption and not the sale of intoxicants. Nor is this court compelled, as are some, to defer the resolution of this issue to the legislature. The fact a common-law rule was in effect when the Wisconsin Constitution was adopted does not mean this court is "bound by the common law" and unable to change the law when it no longer meets the economic and social needs of society. The Wisconsin Constitution, art XIV, sec. 13, provides:

"Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature."

In *State v. Esser* (1962), 16 Wis. 2d 567, 584, 115 N. W. 2d 505, the court stated:

"We conclude that the function of sec. 13, art. XIV, Wis. Const., was to provide for the continuity of the common law into the legal system of the state; expressly made subject to legislative change (in as drastic degree

within the proper scope of legislative power as the legislature might see fit) but impliedly subject, because of the historical course of the development of the common law, to the process of continuing evolution under the judicial power."

In *State v. Esser, supra,* 581, 582, the court, with approval, quoted from the works of Mr. Justice CARDOZO:

" ' "That court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its health and life. It is not and it should not be stationary. Change of this character should not be left to the legislature. . . ." ' "

Changing the common-law rules of immunity of municipalities,[1] parents,[2] religious institutions,[3] charitable hospitals,[4] together with abrogation of the privity requirements between manufacturer and user,[5] clearly demonstrates that this court does not interpret legislative consideration coupled with inaction as indicative of preemption.

Therefore, in the final analysis, the outcome of this case is not determined by application of "proximate cause" or whether the legislature has or has not acted. The controlling consideration is one of public policy, and it is the determination of this court that reasons of public

[1] *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618.

[2] *Goller v. White* (1963), 20 Wis. 2d 402, 122 N. W. 2d 193.

[3] *Widell v. Holy Trinity Catholic Church* (1963), 19 Wis. 2d 648, 121 N. W. 2d 249.

[4] *Kojis v. Doctors Hospital* (1961), 12 Wis. 2d 367, 107 N. W. 2d 131, 107 N. W. 2d 292.

[5] *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 155 N. W. 2d 55.

policy dictate liability not be extended as proposed by plaintiff.

Problems arising out of intoxication are perhaps as old as mankind, probably they have never been unknown in Wisconsin. It is basically a social problem and not a legal problem. The fact is that the legislature of the federal government and of this state, and almost every other state, have determined as public policy that liquor is part and parcel of our social scene. Both federal and state governments indulge in the taxation, and some in the sale, of it, from which revenue is produced. Here we are asked to single out a particular type of business which has been declared legitimate and respectable by our legislature and impose a liability heretofore unknown in this state.

In *Pfeifer, supra,* this court indicated that in dealing with questions of causation, the procedure would be to submit "hard" cases to a jury and then it would be for the court to decide if matters of public policy require that there be no liability. This court is not now approaching the issue in this case from the standpoint of causation. Nevertheless, questions of causation are naturally a part of the overall consideration of this court in making its policy decision. In other cases where this court has expanded liability, the connection between breach of duty and harm has been direct. The liability of a nonprofit hospital, parent, municipality and churches was allowed in situations where issues of remote causation would be a rarity and therefore fit into the scheme outlined in *Pfeifer* for "the unusual case in which the injury suffered is a remote or unusual result of the act claimed to be negligent." *Pfeifer v. Standard Gateway Theater, Inc., supra,* 240. This is not the situation now before this court. Holding that the plaintiff's complaint states a cause of action will result in the unusual case of causation being the norm. Causation in liquor cases will rarely be direct and will usually be remote. "Hard" cases will be the rule and not the exception.

This brings us to another factor which plays a major role in the policy determination of this court, *i.e.*, the difficulty in determining where to cut off the line of liability. During oral argument plaintiff's counsel stated that, in his opinion, liability should be extended to all suppliers of liquor. However, extending liability to the noncommercial vendor would result in great social pressure being applied to such individuals and require their policing the activities of friends and social guests. Assuming for the moment that such results are beneficial, it is questionable just how much success an individual would have in playing out his role in the atmosphere of a private gathering. In addition, such a restriction of social activity encompasses changes far beyond the framework of negligence law previously interpreted and applied by this court. It has also been suggested that if previous case law were to be overruled, some type of distinction could be drawn in imposing liability on the licensed purveyor of intoxicants as contrasted to one dispensing intoxicating liquor under a great variety of circumstances known to exist and not involving commercial licenses. We submit that it is illogical to adopt a rule which would subject to liability a licensed commercial liquor vendor, and not a friend, employer or acquaintance who gave liquor away. *Meade v. Freeman* (1969), 93 Idaho 389, 462 Pac. 2d 54. If the act of providing liquor to one already intoxicated is a negligent act, then it remains a negligent act regardless of who the supplier may be. Singling out licensed liquor vendors would have to be predicated on their being able to provide for insurance or pass the costs onto their customers. However, this approach to resource allocation is not a particularly satisfactory one in that it tends to by-pass the drunken driver both in terms of legal and financial accountability. Another solution—a suggestion more effective if not as popular—was recently stated in an Editor's Note in 1968 Personal Injury Commentator, 264, 265, Professor Ray J. Aiken, Editor:

"Sale of liquor or gasoline, because it is assumed to be a more identifiable 'industry' than purchase, use, or misuse of those commodities, is declared to be subject to 'resource allocation.' Drunken driving, being less 'industrialized' despite the fact that it is more 'socialized,' is assumed to be immune from participation in the process, at least beyond the immediate resources of the individual driver or his insurer; and this immunity triggers a demand for liability of a more affluent class.

"Perhaps it would be more feasible simply to impose the gross social costs of drunken driving on drunken drivers, treating them as a conceptual 'class' or 'industry,' instead of as individual 'causes' of a given injury. Each traffic-court conviction would produce, as a 'fine,' a punitive sum for the public treasury and an actuarial share of the liability of the drunken drivers' fraternity to innocent victims, the latter sum being chargeable to the driver's insurer. The resultant 'pot' would not be insignificant, and the proximate cause problem would not become so baffling."

Finally, it is argued that risk of loss should be placed on someone who has the opportunity to anticipate and prevent the harm, that is, the dispenser or vendor of the intoxicating beverage. The issue would then be one of fact for the judge or jury to determine whether a reasonable person dispensing the intoxicating liquor might foresee that a drinking person either had or was developing a propensity to do harm. Our attention has been directed to studies relating to accidents and the use of alcohol by drivers of motor vehicles and pedestrians. They present figures that are generally within the knowledge of all concerned citizens. Apparently the hope is to reduce these figures by imposing civil liability on the vendor or dispenser of the alcoholic beverage. On the other hand, to extend liability would subject every vendor or dispenser to exposure every time he provided a person with a drink and would multiply litigation in a claims-conscious society. It would seem reasonable to conclude that every vendor or dispenser of an intoxicating beverage would be a likely defendant in subsequent litigation arising from the vendee's negligent act, regardless of

where those acts took place. We are not persuaded by the argument that he would have an opportunity to defend the litigation. The multiplicity of ways in which such claims would arise and the defense thereof would in many instances be impossible and require the imposition of an unjust financial burden. Injuries arising out of the use of alcohol, particularly to innocent third parties, is a cause of great concern; however, eliminating or at least reducing the threat of the drunken driver can be done in a more direct and efficient manner than holding accountable for damages those who have made liquor available to an able-bodied person. Human beings, drunk or sober, are responsible for their own torts. Allowing plaintiff's cause of action against the defendant would only erode that responsibility and impose an unjust burden on suppliers of liquor.

In conclusion, counsel for appellant has directed our attention to *Constantineau v. Grager* (D. C. Wis. 1969), 302 Fed. Supp. 861, decided by the majority of a three-judge district court for the Eastern District of the United States District Court of Wisconsin. The case challenges the constitutionality of sec. 176.26, Stats., and sec. 176.28, relating to sale of intoxicants to certain forbidden persons and which statutes constitute the basis for civil liability under sec. 176.35. The majority opinion determined the statutes to be unconstitutionally violative of the due process clause of the fourteenth amendment to the United States Constitution, because they prohibited sale of intoxicating beverages to specified persons on written notice without either notice or hearing prior to posting of the persons named. The question has not been before this court and we do not consider the issue of preemption of civil liability to be before us now on this appeal. We are advised *Constantineau* has been appealed to the United States Supreme Court.

We fail to find compelling equitable considerations in plaintiff's favor which require this court to abandon a

rule of longstanding both in this state and in many others.

*By the Court.*—Order affirmed.

HALLOWS, C. J. (*dissenting*). The time has arrived when this court should again exercise its inherent power as the guardian of the common law and hold upon general principles of common-law negligence a person, who, when he knows or should have known a person is intoxicated, sells or gives intoxicating liquor to such a person, is guilty of a negligent act; and if such negligence is a substantial factor in causing harm to a third person, he should be liable with the drunken person under our comparative-negligence doctrine. Conceded, the common law in this state for almost one hundred years has been to the contrary. *Dillon v. Linder* (1874), 36 Wis. 344; *Demge v. Feierstein* (1936), 222 Wis. 199, 268 N. W. 210; *Seibel v. Leach* (1939), 233 Wis. 66, 288 N. W. 774; *Farmers Mut. Automobile Ins. Co. v. Gast* (1962), 17 Wis. 2d 344, 117 N. W. 2d 347, but the basis upon which these cases were decided is sadly eroded by the shift from commingling alcohol and horses to commingling alcohol and horsepower.

The denial of recovery in this area of torts has been traditionally premised upon four basic grounds: (1) No duty existed because it was the drinking, not the selling, of the liquor which was the cause; and harm to a third person could not be foreseen from the selling of the liquor; (2) that the legislature has preempted the field by the passage of a Dram Shop Act; (3) that the change in the common law is the exclusive prerogative of the legislature; and (4) creating liability would open the door to a flood of unfounded cases.

The majority opinion recognizes the selling of liquor to a drunk is negligence and a substantial factor contributing to the cause of a foreseeable injury to third persons. It thus repudiates the rationale of *Seibel v.*

*Leach, supra.* The majority reiterates this court's past position that it has a duty and the power to change and mold the common law to meet changing needs and is not compelled to defer changes in the common law to the legislature. In response to the third traditional ground, the court sidesteps the question of whether the existence of secs. 176.26, 176.28, and 176.35, Stats., preempts the field by stating this question is not before the court. I think these sections do not preempt and would depart from *Farmers Mut. Automobile Ins. Co. v. Gast, supra.* The majority opinion rests its decision against liability, although it recognizes negligence at common law and causation, solely upon what it considers to be public-policy factors. This is the point of our departure.

Of course, drinking is a social problem but the function of law is to help solve social problems. Law is life; it deals with the relationship of human beings and must concern itself with everyday problems whether they are labeled social or legal. It does no good to verbalize about the court's inherent power to update the law and then not act when there is a need crying for satisfaction. In recognizing the selling or giving of liquor to a drunk is negligence because it is reasonably foreseeable that such a person will cause harm to another while intoxicated, the common law justly removes an arbitrary exception to the fault principle of tort liability. This reasonable foreseeability of harm is evidenced by the statistics of auto accidents and carnage on our highways. *Alcohol and Highway Safety,* A report to the Congress from the Secretary of Transportation, August, 1968; *Deaths Reported in Wisconsin,* 1968, Annual Report of Wisconsin Department of Health & Social Services, summary p. (O) ; *The Role of the Drinking Driver in Traffic Accidents,* Department of Police Administration, Indiana University, 1965, p. 165. Recognizing liability is not singling out a particular type of business upon which to impose liability. On the contrary, the majority opinion

in effect immunizes a particular industry from liability for conduct the court concedes to be negligence and a cause of injury to third persons. Its result is reached in part on the theory the injury is too remote.

I think the majority misreads *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. 2d 29. *Pfiefer* contemplates a bizzare result, one in the chain of causation in a philosophical sense but so fantastic that it would be unjust to hold the negligent person liable in damages. Under comparative negligence, selling liquor to a drunk and drinking by the drunk are concurrent causes. Drinking does not constitute an intervening superseding cause insulating the responsibility of the prior seller of the liquor. A drunk driving an auto and causing an accident is no unusual bizzare result but an every night tragedy. Such cases are not "hard" and the results are not remote. They are commonplace and of national concern. A person, who gives or sells liquor to one he knows has had enough or too much and cannot exercise self-protective care, is not in social justice entitled to immunity for such conduct.

The majority is concerned with the difficulty of making a distinction of where to draw the line between liability and no liability. After having correctly stated that foreseeability was part of negligence and not causation, the majority opinion suggests it is rather difficult to draw a line between selling liquor and giving liquor to an intoxicated person. In effect, the majority says if it is logical to hold the commercial dispenser liable, then there is no legitimate basis for not also holding the private dispenser liable; and since it is impractical to hold a private dispenser liable, we will not hold either. The necessity of drawing a line of demarcation is a straw-man argument, and I see no reason why such a distinction must be made. If a person loans his automobile to a minor incapable of driving or to an intoxicated person unable to drive or gives a loaded gun to a minor

who is unable to use it safely, the law has no difficulty in finding liability. *See Hopkins v. Droppers* (1924), 184 Wis. 400, 408, 198 N. W. 738, 741; Campbell, *Work of the Supreme Court*, 1941 Wis. L. Rev. 116, 117. We are still our brothers keepers, and it would be a rare host at a social gathering who would knowingly give more liquor to an intoxicated friend when he knows his invitee must take care of himself on the highway and will potentially endanger other persons. Social justice and common sense require the social host to see within reason that his guests do not partake too much of his generosity.

The majority opinion considers it poor public policy to hold a supplier of liquor liable because this would dilute the responsibility of a drunk driver and thus would bypass his legal and financial accountability. Implicit is the suggestion this wrong and the drunk driver should remain solely liable as a deterrent to his drinking. But a drunk driver is just as legally and financially responsible to the innocent victim of his conduct as the supplier of liquor when their negligence concurred to cause harm to a third person. An innocent victim may recover against either tort-feasor; but under our doctrine of contribution, the joint tort-feasors will allocate between themselves the loss in proportion to the contribution of their fault. *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N. W. 2d 105. If a drunk driver is not 100 percent responsible for the injury, he ought not to pay that proportion of the injury which is the fault of the supplier of the liquor which made him intoxicated. If we are looking for a deterrent for drinking, sole liability of the drunk driver will not deter as effectively as liability for selling liquor to an inebriate—one cannot drink if no one will sell or give him liquor.

The argument that extending liability will increase litigation is the standard objection made every time such a question is considered. This scare argument of unfounded claims, increased burden on the courts, and the

unjustness of putting a person to a defense of a lawsuit, has been considered and rejected many times. If accepted, it would bring to a standstill the important and vital work of the court in respect to keeping the common law modern and viable. These same dire results, predicted when this court abolished governmental, parental, hospital, and religious immunities, have not come to pass. Logically this ground caves in of its own weight because extended logically no recovery should be allowed in any area because someone may bring a false claim.

Only two cases since this problem has come to the fore in legal literature in the last ten years have taken the view followed by the majority. These states are Nevada [1] and Idaho.[2] On the other hand, the old text relating to the common-law no-liability rule in Corpus Juris Secundum and American Jurisprudence has been changed to reflect the shift in the new cases finding liability. *See* 48 C. J. S., *Intoxicating Liquors* (1969 Supp.), sec. 430; 30 Am. Jur., *Intoxicating Liquors* (1965 Supp.), sec. 521.

Most of the literature has been in favor of abolishing the old rule and in one form or another rejecting all the policy considerations relied upon by the majority. *See* 75 A. L. R. 2d 821, 77 A. L. R. 2d 1260; 31 ATL L. J. (1965) 121; 32 ATL L. J. (1968) 407. The impetus for finding common-law liability was engendered by the landmark case of *Rappaport v. Nichols* (1959), 31 N. J. 188, 156 Atl. 2d 1, 75 A. L. R. 2d 821. It is from this much cited and discussed case that the modern trend has sprung. Today at least nine jurisdictions have imposed general common-law negligence liability based upon the commonsense public policy that one who furnishes alcoholic beverages to a person who is, or may reasonably be expected to become, intoxicated, may be held liable if the consumption of said alcoholic beverages is causally related to the damage complained of.

---

[1] *Hamm v. Carson City Nugget, Inc.* (Nev. 1969), 450 Pac. 2d 358.

[2] *Meade v. Freeman* (1969), 93 Idaho 389, 462 Pac. 2d 54.

In *Davis v. Shiappacossee* (Fla. 1963), 155 So. 2d 365, the court held a father had a cause of action for the death of his minor son who lost control of the automobile he was operating because of intoxication induced by the defendant's illegal sale of alcoholic beverages to him. In *Elder v. Fisher* (1966), 247 Ind. 598, 217 N. E. 2d 847, the court held a passenger had a cause of action for injuries sustained in an automobile accident caused by the defendant's illegal sale of liquor to a minor driver. The Kentucky court in *Pike v. George* (Ky. 1968), 434 S. W. 2d 626, held a passenger had a cause of action for injuries sustained in an automobile accident caused by the defendant's illegal sale of liquor to a minor driver. In *Adamian v. Three Sons, Inc.* (1968), 353 Mass. 498, 233 N. E. 2d 18, it was held passengers injured in an automobile collision with a drunk driver had a cause of action against the tavernkeeper who solicited motorist-patrons with a large parking lot and who sold liquor in such amounts as to cause the driver to become intoxicated. In *Ramsey v. Anctil* (1965), 106 N. H. 375, 211 Atl. 2d 900, the court held a patron who injured his wrist by pounding on a table had a cause of action for the tavernkeeper's sale of liquor to him after he was intoxicated.

The New Jersey court in *Rappaport v. Nichols, supra,* held a wife had a cause of action for her husband's death when the car driven by him collided with one driven by an intoxicated minor to whom defendant had illegally sold intoxicating liquors. *See also Galvin v. Jennings* (3d Cir. 1961), 289 Fed. 2d 15 (intoxicated driver injured in automobile accident had cause of action against tavernkeeper who had sold him liquor while intoxicated) and *Soronen v. Olde Milford Inn* (1966), 46 N. J. 582, 218 Atl. 2d 630 (wife had action for husband's death resulting from fall in defendant's tavern after defendant had served him alcoholic beverages while deceased husband was visibly intoxicated). A lower

New York court in *Berkeley v. Park* (1965), 47 Misc. 2d 381, 262 N. Y. Supp. 2d 290, held the defendant's service of intoxicating liquors to an intoxicated driver and passenger gave a cause of action in common-law negligence, as well as under the dram shop statute, to occupants of the other car involved in an automobile collision with the intoxicated driver's automobile. In *Majors v. Brodhead Hotel* (1965), 416 Pa. 265, 205 Atl. 2d 873, the court held the sale of liquor in such amounts as to cause intoxication gave the plaintiff patron a cause of action for injuries sustained in a fall from a ledge of the defendant hotel; and again in *Smith v. Evans* (1966), 421 Pa. 247, 219 Atl. 2d 310, a minor driver had a cause of action for injuries sustained in an automobile accident caused by defendant's sale of intoxicating liquors to him while in a state of visible intoxication. Lastly, in Tennessee the court in *Mitchell v. Ketner* (1964), 54 Tenn. App. 656, 393 S. W. 2d 755, held the sale to an already intoxicated driver would give injured third persons a cause of action, but the driver was not intoxicated at the time of purchase in the case in question.

In 10 additional states the courts have allowed common-law actions on particular facts,[3] and in six of these 19 states [4] there has been civil damage or "dram shop"

[3] *Pratt v. Daly* (1940), 55 Ariz. 535, 104 Pac. 2d 147, 130 A. L. R. 341; *Hull v. Rund* (1962), 150 Colo. 425, 374 Pac. 2d 351; *Dodd v. Slater* (1960), 101 Ga. App. 362, 114 S. E. 2d 170; *Colligan v. Cousar* (1963), 38 Ill. App. 2d 392, 187 N. E. 2d 292; *Waynick v. Chicago's Last Department Store* (7th Cir. 1959), 269 Fed. 2d 322, 77 A. L. R. 2d 1260; *Skinner v. Hughes* (1850), 13 Mo. 440; *Ibach v. Jackson* (1934), 148 Or. 92, 35 Pac. 2d 672; South Carolina, *Harrison v. Berkley* (1847), 1 Strob. 525, 47 Am. Dec. 578; *Swanson v. Ball* (1940), 67 S. D. 161, 290 N. W. 482; *McCue v. Klein* (1883), 60 Tex. 168, 48 Am. Rep. 260.

[4] Colo. Rev. Stats., sec. 41–2–3 (1963); Ill. Rev. Stats., ch. 43, sec. 135 (1967); 20 Mich. Comp. Laws, sec. 436.22 (1969 Supp.); 23A McKinney's N. Y. Consol. Laws, General Obligations Law, sec. 11–101 (1968 Supp.); Or. Rev. Stats., sec. 30.730 (1967); S. D. Comp. Laws, sec. 35–4–38 (1968 Supp.).

statutes comparable to sec. 176.35, or secs. 176.26 and 176.28, Stats., but such statutes did not pre-empt the field and prevent the court from finding common-law liability.

We reiterate, this court should in this case put into action what it said in *Bielski v. Schulze, supra,* page 11:

"Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of *stare decisis,* which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others 'long dead and unaware of the problems of the age in which he lives, do his thinking for him.' Mr. Justice Douglas, Stare Decisis, 49 Columbia Law Review (1949), 735, 736."

and what the majority quoted from *State v. Esser* (1962), 16 Wis. 2d 567, 584, 115 N. W. 2d 505. This is not a new doctrine. Its expression goes back at least a generation. In *Schwanke v. Garlt* (1935), 219 Wis. 367, 371, 263 N. W. 176, this court said:

"While we are at all times bound to uphold the constitution of this state, and to give due effect to its paramount provisions, we may not ignore the fact 'that the common law is susceptible of growth and adaptation to new circumstances and situations, and that courts have power to declare and effectuate what is the present rule in respect of a given subject without regard to the old rule. . . . The common law is not immutable, but flexible, and upon its own principles adopts itself to varying conditions.' "

I must and do respectfully dissent from the decision of the majority.

I am authorized to state Messrs. Justices WILKIE and HEFFERNAN join in this dissent.