Eddie Earl HODGES, (Plaintiff) Appellant,

v.

AMERICAN BAKERIES COMPANY, a corporation, and Kenneth Earl Dickson, (Defendants) Respondents.

No. 51436.

Supreme Court of Missouri,

Court En Banc March 13, 1967.

Pollock, Ward, Klobasa & McGinnis, T. Hartley Pollock, and Roberts P. Elam, St. Louis, for appellant.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, F. X. Cleary, Paul S. Brown, J. C. Jaeckel, St. Louis, for respondents.

HENLEY, Judge.

This is an action for $25,000 damages for the wrongful death of plaintiff's husband. Verdict and judgment were for defendants and plaintiff appeals. This court has jurisdiction because the amount in dispute exceeds $15,000. Article V, § 3, Constitution of Missouri, V.A.M.S.; § 477.040, RSMo 1959, V.A.M.S.; Brewer v. Silverstein, Mo., 64 S.W.2d 289, 290 [1].

Plaintiff alleges the court erred in (1) giving instruction No. 6, on behalf of defendants, and (2) admitting in evidence the testimony of a witness for defendants. The case was submitted on excessive and negligent speed. It was tried in November, 1964, before the effective date of our rules requiring use of MAI instructions.

The motor vehicle collision in which plaintiff's husband was killed and out of which this action arose occurred Sunday night, August 5, 1962, at about 10 o'clock on U. S. Highway 61, a two-lane highway in Perry County, about one and one-half miles north of the intersection of that highway and state route "A", near Uniontown. Highway 61, in the general area of this collision, runs in a north-south direction, has a concrete surface and a concrete lip on its edges or sides and dirt shoulders twelve and one-half feet wide on its east and ten feet wide on its west side. On the night in question the sky was overcast and dark; it had been raining and, according to defendant Dickson, was raining at the time of collision; the roadway was wet and visibility reduced; normally heavy weekend traffic was augmented by an annual picnic at Perryville. Speed limits were 70 mph in the daytime and 65 mph at night. The vehicles involved were a 1949 model black Packard sedan, occupied by plaintiff's deceased husband as a passenger and others, and a GMC diesel tractor pulling a Fruehauf enclosed van-type trailer driven by defendant Dickson, an employee of defendant, American Bakeries Company.

At the time of the collision the Packard was stopped, headed north, on the pavement in the east or northbound lane "right at" and approximately due west of a yellow, diamond shaped, highway marker located.

on the east shoulder indicating by a black arrow a curve ahead to the right or east and by the numerals "55", a suggested speed limit for negotiating the curve. John Whitley, owner of the Packard, Willie Williams, plaintiff's decedent, and Anna McCalister, sister of plaintiff, were returning from a funeral they had attended at Marianna, Arkansas, to their homes in Kirkwood, Missouri. At the time the Packard stopped or stalled on the highway at the point of the later collision, Mr. Whitley was driving, Williams was seated on the right-hand side of the front seat, Mrs. McCalister occupied the back seat on the right, and plaintiff's husband occupied the left side of the back seat.

While the general area is hilly, the highway is straight from a point 1,000 feet south of the above-mentioned curve marker to the scene of the collision. And north of that scene it is straight for another 300 feet until it begins to curve to the right or east. Commencing at the point 1,000 feet south of the curve marker and driving north, the highway is level for approximately 100 feet, and then it goes slightly upgrade for approximately 225 feet to a crest, thence slightly downgrade approximately 125 feet to and across a bridge at Indian Creek (550 feet south of the scene of the collision), thence continues the slight downgrade another 150 feet to a low point, thence up a 3.6% grade some 400 feet to the point of collision. Approximately 100 feet south of the point of collision a farm lane leads east off the highway.

Willie Williams, the only witness for plaintiff as to the facts of the collision, testified: He drove the Packard from Marianna to Jackson, Missouri, where he turned over the driving duties to Mr. Whitley and went to sleep sitting in the front seat; that the next thing he knew the automobile jerked a couple of times, stalled, and came to a full stop in the northbound lane "right at the [curve] sign"; that it was drizzling rain at the time; that Mr. Whitley tried to start the motor, but got no reaction; that Whitley, dressed in white hat, white shirt and black pants, then got out and walked to the rear of the automobile and he (Williams) turned around in the seat and looked toward the rear where he could see Whitley some ten or twelve feet behind the automobile and in the center of the east lane. He also saw the headlights of an approaching northbound vehicle which later proved to be a Ford pickup truck. Watching the headlights of this vehicle, he reached over with his foot and applied the brake pedal to brighten the taillights. He could tell that the taillights were burning because he could see the red reflection from the wet pavement. He also testified that the Packard had a red reflector strip below each of its taillights. The Ford pickup came up behind the stalled Packard, slowed down almost to a stop, and then continued on up the highway.

Williams further testified that he continued to watch to the rear and saw the approaching headlights of another vehicle, the tractor-trailer unit or rig being driven by defendant Dickson; that the headlights were on low beam until it reached the Indian Creek bridge and then switched to high beam; that he continued to watch Whitley, who was walking farther to the rear, and the headlights; that as the tractor-trailer approached at a speed estimated by him at between 50 and 60 mph, he saw Whitley jump to the side of the road near the farm lane; that the tractor-trailer continued its approach, without slowing and collided with the rear of the Packard; that the collision caused him to be thrown out of the automobile and onto the east dirt shoulder.

Williams further testified that he did not know how long the Packard had been stopped on the highway before the collision, but that "it was a very short time"; that no one made any attempt to push it backwards and onto the shoulder.

Virgil W. Bell, called to the stand by plaintiff, testified: that on the night of August 5, 1962, he was enroute north on Highway 61 to St. Louis, driving his 1957

Ford pickup truck; that it was a dark, misty night, the road was wet and the traffic "pretty heavy"; that he was using the low beams on his headlights and driving at a speed of about 45 miles an hour; that south of Perryville he came upon a stalled car shortly after crossing Indian Creek bridge; that as he crossed the bridge he met a southbound car which blinked its lights and, when he looked at the road again, he could see a stalled car ahead some 350 to 500 feet; that as he approached the stalled car another southbound car was approaching so close that he could not then pass and he had to stop; that he realized what was confronting him when he was 250 or 350 feet from the stalled automobile; that he immediately applied his brakes and his truck slid, turned at an angle to its left, and came to a stop some 5 to 15 feet behind the stalled automobile; that, after the second southbound car had passed, he went around the stalled automobile and on his way. He did not know whether it was the headlights on his truck or the stalled car being silhouetted in the headlights of the second southbound automobile which enabled him to see the Packard; that he did not see a man behind the stalled car flagging or waving his arms, but did see a man standing by its door on the driver's side; and, that he did not see any lights on the Packard. He further testified that he was in a filling station at Perryville a week or so later and learned about this collision.

Defendant, Kenneth Earl Dickson, the only witness for the defendants as to the facts of the collision, testified that on the occasion in question he was driving the tractor-trailer unit of the other defendant from Sikeston to St. Louis, Missouri; that the unit was equipped with a tachograph, which recorded the time of day, whether the vehicle was in motion, and, if so, its speed, and the miles traveled; that he normally drove this highway at a speed of 55 mph, when it was not raining; that as he approached the scene of collision it was raining and visibility was "interfered with some"; that he believed (but was not positive) that his headlights were on low beam; that his tractor-trailer was moving between 50 and 55 mph (the tachograph recording shows approximately 52 mph); that he did not see the automobile with which his vehicle collided until he was 75 to 100 feet away; that as he started "uphill" his headlights "picked up" the Packard; that he did not see any lights on the automobile; that he saw both the automobile and a man at its left rear at about the same time; that when he first saw the automobile it appeared to be standing and he immediately applied his air brakes, and his vehicle started sliding and "jackknifing" on the wet pavement; that he did not know what part of the Packard was involved in the impact, but the right front corner of the tractor was involved; that he had not seen any oncoming southbound traffic before, but, just as the impact occurred, he saw the lights of an approaching southbound vehicle, and it and his tractor also collided; that he was thrown out of the cab of his tractor and rendered unconscious; and, that his vehicle came to a stop on the east shoulder of the road.

Dickson further testified that he had been employed by the defendant corporation since 1958, driving tractor-trailer units or rigs; that he did not know within what distance in feet or rig lengths he could stop his truck at speeds of 50 or 52 mph; that he did not know how far ahead his headlights, on low beam, would reveal an object.

William Bland, a professional engineer, called to the stand by plaintiff, testified: that, at the request of plaintiff's counsel, he made calculations of stopping distances with respect to a vehicle such as defendants' tractor-trailer; that such tractor-trailer should be able to be brought to a stop, under the conditions existing at the scene of this collision, in 491 feet or less if traveling at 55 miles an hour, in 410 feet or less if traveling at 50 miles an hour, in 335 feet or less if traveling at 45 miles an hour, and in 265 feet or less if traveling at 40 miles an hour; that when he used the term "or less" in giving these stopping distances, he

intended that term to include a variable distance of between 10 and 20 feet.

Instruction No. 6, given by the court at defendant's request, informed the jury:

" * * * that if you believe and find from the evidence that on the occasion in question, the black Packard sedan in which plaintiff's husband was riding stopped on the traveled portion of U. S. Highway 61, and if you further believe and find that there were no lights on said black Packard Sedan, *if you further believe and find that Kenneth Earl Dickson, the driver of the tractor-trailer, in the exercise of the highest degree of care, could not anticipate that a motor vehicle was likely to be parked on the traveled portion on the highway in the northbound lanes without lights,* and if you further believe and find that the said Kenneth Earl Dickson was traveling at a speed of 50 or 55 miles per hour and that he was in the exercise of the highest degree of care traveling at the said speed, then and in such event plaintiff is not entitled to recover and you will find your verdict in favor of defendants."

■ We have italicized that portion of the instruction plaintiff contends causes it to be prejudicially erroneous. Plaintiff asserts that the instruction is ambiguous, misleading and confusing, and contains positive misstatements of law. One of the five prongs of plaintiff's attack upon the above instruction is that it permitted the tractor-trailer driver's negligence vel non to be tested or determined by his personal, individual, subjective standard, rather than the impersonal and objective standard required by law. She argues that her witness, Bell, driver of the Ford pickup truck, saw the stopped Packard on the highway when 350 to 500 feet away, but that defendant truck driver, Dickson, did not see it until he was within 75 to 100 feet of it; that particularly

under these facts " * * * to instruct the jury as was done by the emphasized portion of the instruction here, was to permit the issues of the defendant truck driver's 'anticipation' of the presence of a stopped automobile on the highway without lights, and his discovery of such stopped automobile, to be determined by his personal, individual, subjective standard, rather than by the impersonal, objective standard of whether a man of ordinary prudence, exercising the highest degree of care, and 'anticipating' the presence on the roadway of a stopped vehicle without lights and appreciating that there was danger, would have or would not have operated the truck at a speed of between 50 and 55 miles an hour under all the circumstances there." Defendants contend, contra, that the instruction is not subject to this attack; that it required a finding of the exercise by defendant truck driver of the highest degree of care as that phrase is defined by instruction No. 3;[1] that the plaintiff, in contending that instruction 6 substituted the personal standard oi Dickson instead of the standard contained in instruction 3, assumes the position that the jury was not composed of persons of ordinary intelligence; that the instructions are to be read together and considered as a whole, and that the law presumes that the jury followed them. Defendants cite: Stein v. McDonald, Mo., 394 S.W.2d 297, wherein this court said at l. c. 299 [2], " 'We must assume that the jury was made up of persons of ordinary intelligence who had a reasonable knowledge and understanding of the words used' "; Layton v. Palmer, Mo., 309 S.W.2d 561, at l. c. 570 [20], 66 A.L.R.2d 1242, wherein this court said, "The instructions should be read together and considered as a whole", and "If, when so read, the instructions are harmonious, clear and complete, error cannot be allowed because one of them, considered alone, is defective"; and Girratono v. Kansas City Public Service Co., 363 Mo. 359,

---

1. Instruction 3 contains the time-honored definition of the phrase "highest degree of care"; that is: that degree of care that a very careful and prudent person would use under the same or similar circumstances. Martin v. Turner, Mo., 306 S.W.2d 473, 478 [8].

251 S.W.2d 59, wherein this court said at l. c. 65 [10], "The assumption is that jurors follow the instructions." The cases cited by defendants are of no assistance to us; none are in point on the question for decision in the instant case; we agree, of course, with the abstract statements quoted from those cases.

By requiring the jury to find that defendant Dickson could not "anticipate" that an automobile was likely to be stopped or parked on the highway without lights, defendants have specifically injected into the case through instruction 6 an element of actionable negligence not specifically submitted in plaintiff's verdict-directing instruction, but an element which, as a general rule, may be said to be inherent in such negligence. The general rule is that "Reasonable anticipation of * * * danger is an essential element of actionable negligence; and whether negligence exists in a particular case depends on whether or not a reasonably prudent person [in this case: a very careful and prudent person] would have anticipated the * * * danger and provided, or guarded, against it." 65 C.J.S. Negligence § 5(2) (a), p. 354. We do not reach or rule the question of whether, under the circumstances of this case, the court erred in giving the instruction because it " * * * permitted the jury to find that * * * Dickson 'could not anticipate' the presence of an automobile without lights on the highway * * *" which, plaintiff contends, was " * * * contrary to the law [requiring] him [Dickson] to 'anticipate' exactly that, amongst other things." It is not necessary that we do so, for the several reasons stated herein. Having chosen to so inject that element, defendants were required to submit the true test of " * * * whether the circumstances were such that a man of ordinary prudence [in this case one exercising the highest degree of care] would have [anticipated] the danger * * *," instead of the false test of whether *the person charged* with negligence could have anticipated the existence of the stopped automobile and appreciated the dan-

ger. Wilt v. Moody, Mo., 254 S.W.2d 15, 19 [7]; Dixon v. General Grocery Co., Mo., 293 S.W.2d 415, 421 [7]; Beahan v. St. Louis Public Service Co., Mo., 237 S.W.2d 105, 106–107 [1, 2]; Harris v. Rowden, Mo., 305 S.W.2d 25, 28 [3]; 38 Am.Jur., p. 679, § 33. The question submitted ought to have been whether or not the defendant driver *should* have "anticipated," in the exercise of the highest degree of care, not whether *he,* according to *his* own personal judgment, could have "anticipated."

We hold that instruction 6 is prejudicially erroneous in that it directed a verdict for defendants, upon a finding that " * * * Dickson, in the exercise of the highest degree of care, could not anticipate * * *", *by the application of his personal, individual standard of such care,* that an automobile would be stopped on the highway without lights. "The standard of conduct exacted by the law is an external and objective standard * * *," and not the personal, individual, subjective standard of the actor involved. Dixon v. General Grocery Co., supra, 293 S.W.2d l. c. 421. The law is " * * * that whether or not a person exercised a proper degree of care is not to be determined by reference to his own personal judgment in the situation. The law 'does not permit him to make the determination of what is, and what is not, due care under the circumstances, according to his own judgment.'" Beahan v. St. Louis Public Service Co., supra, 237 S.W.2d l. c. 107.

Defendants, in asserting that instruction 6 is not subject to the attack made by plaintiff, say only that "The instruction, in two places, required a finding by the jury of the exercise of the 'highest degree of care' on the part of Dickson;" and, that the "highest degree of care" is defined by instruction 3 given at the request of plaintiff. But, what Dickson could or could not "anticipate," whether or not in the exercise of due care, is necessarily determinable by *his* personal, individual and subjective standard. We may not assume that the

jury did not follow defendants' submission, which permitted Dickson, and not the jury, to apply the test of proper care. The submission was a positive misdirection.

Because the case must be reversed and remanded for the error noted in instruction 6 and at a new trial MAI instructions would be used, it is unnecessary that we discuss other attacks made on the instruction; nor is it necessary that we discuss plaintiff's point as to the admissibility of evidence.

The judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion by HENLEY, J., is adopted as the opinion of the Court en Banc.

All concur, except HOLMAN, P. J., who dissents.