Kristi Lynn **ELLIOT**, et al.,
Respondents,

v.

James D. **KESLER**, Defendant,

**Brunswick Corporation, Appellant.**

No. WD 41572.

Missouri Court of Appeals,
Western District.

Aug. 14, 1990.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Oct. 2 and Oct. 30, 1990.

Application to Transfer Denied
Dec. 18, 1990.

Terry Lynn Karnaze, Kansas City, for appellant.

Frederick J. Wilkins, Kansas City, for respondents.

Before NUGENT, C.J., FENNER, J., and WASSERSTROM, Senior Judge.

FENNER, Judge.

Appellant, Brunswick Corporation appeals from an adverse judgment against it and defendant James D. Kesler, upon a jury verdict in favor of respondents, in the amount of 2.75 million dollars. Respondents brought this wrongful death action as the survivors of Andra McAlister. Respondents were plaintiffs at trial and are hereinafter referred to as plaintiffs.

On Friday, April 12, 1985, James Kesler, 23 years old at the time, arrived, at approximately 10:00 p.m., at Gladstone Bowl, a bowling alley owned by appellant. Kesler had previously been drinking at a bar, by the name of Donovan's, from about 4:30 p.m., that same day.

Roberta Goff was the counter control attendant and assistant manager on duty at Gladstone Bowl on the night of April 12, 1985. Kesler was a regular Friday night bowler and Goff noticed that he was an hour late on the night in question. Goff also observed that Kesler "had enough to drink" when he arrived at the bowling alley.

Goff observed Kesler attempting to bowl. Kesler could not control the ball, he was stumbling and falling as he attempted to bowl. There was evidence, which will be discussed more specifically later, that Kesler was served a couple of drinks at the bowling alley and then cut off because he was already drunk. After being at the bowling alley for approximately 45 minutes, Kesler stopped bowling, took off his shoes and walked past the control counter, waving at Goff as he went out the door. Goff admitted that Kesler appeared drunk and unfit to drive as he went out the door.

A few minutes after Kesler left the bowling alley he returned and approached the control counter. Kesler told Goff that he had locked his keys in his car and needed a coat hanger to unlock the door. At trial, Goff testified that there was a man with Kesler when he returned to the bowling center and she assumed the other man would help him. She also testified that Kesler told her he needed to get in his car because he left his lights on. In her deposition testimony, Goff testified that she knew Kesler intended to drive when he asked for the coat hanger. Goff handed Kesler a coat hanger from a coat rack near the control counter and he left. The coat rack was available for use by patrons of the bowling alley.

A short time later, at approximately 11:00 p.m., Kesler was involved in a head on collision with an automobile driven by Andra McAlister. Kesler was rounding a curve when he crossed the center line colliding with Andra McAlister's vehicle. Andra McAlister died from injuries she received in the accident.

It was apparent to police officers at the scene of the accident that Kesler was intoxicated. A blood sample drawn approximately two hours after the accident revealed that Kesler's blood alcohol content was .27 percent at that time.

Plaintiffs filed a wrongful death action, under § 537.080,[1] against Kesler and Brunswick. Plaintiffs asserted two theories of liability against Brunswick. First, plaintiffs alleged negligence in selling and supplying alcoholic beverages to Kesler with knowledge that he was intoxicated. Second, plaintiffs alleged negligence in assisting Kesler to gain access to his car and car keys by supplying him with a coat hanger knowing that he was unfit to drive. The jury was instructed on both theories and further instructed to consider aggravating circumstances when assessing damages. The jury returned a verdict of 2.75

---

1. All statutory references are to RSMo 1986, unless otherwise specifically stated.

million dollars against Brunswick and Kesler. Kesler was found 60 percent at fault and Brunswick 40 percent. Only Brunswick appeals.

In reviewing a judgment based upon a jury verdict in a civil action, an appellate court considers the evidence in the light most favorable to the prevailing party, giving that party the benefit of all favorable inferences reasonably drawn from all of the evidence. *Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273, 274 (Mo. banc 1984). Further, the reviewing court must disregard the appellant's evidence unless it supports the verdict. *Id.* In an action under § 537.080, the plaintiffs must establish by a preponderance of the evidence that the defendant's wrongful act caused the decedent's death, the standard of proof required in all civil actions. *Contestible v. Brookshire*, 355 S.W.2d 36, 40 (Mo.1962).

## I.

■ In their first point on appeal, Brunswick argues that the trial court erred in submitting plaintiffs' claim that Brunswick negligently assisted Kesler in gaining access to his car by providing him with a coat hanger.

The parties have not cited, nor do we find, a case where Missouri has recognized a cause of action for negligent assistance of a drunk driver. Plaintiffs argue that general theories of negligence support their claim for negligent assistance, while Brunswick argues that it is established public policy in Missouri not to impose liability on third parties for the torts of drunk drivers.

Actionable negligence consists of a duty owed by the defendant to the plaintiff, a breach of that duty by the defendant, and an injury to the plaintiff which is caused by the breach of the duty. *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. banc 1988).

The question here is whether Brunswick owed a duty to plaintiffs' decedent to not assist Kesler in gaining access to his car and car keys when Brunswick knew or should have known that Kesler was too intoxicated to drive, and whether the breach of such duty proximately caused the injury inflicted. An analysis of the development of Missouri law in regard to the liability of tavern owners for injuries to third persons by intoxicated patrons shows the public policy of Missouri on this question.

■ The common law rule is that a tavern owner can not be held liable for injuries to third persons which were caused by an intoxicated person. *Carver v. Schafer*, 647 S.W.2d 570, 572 (Mo.App.1983). In 1934, the General Assembly repealed Missouri's dramshop act which had provided a civil remedy against dramshop owners for injuries caused by their intoxicated patrons. § 4487, RSMo 1929 (repealed 1933–34 Laws of Missouri, 77). The repeal of the dramshop act restored questions of dramshop liability to the arena of common law.

From 1934 to 1980, no cause of action existed in Missouri against one who furnished alcohol to a person who became voluntarily intoxicated and injured another. In 1980, this court handed down its decision in *Sampson v. W.F. Enterprises, Inc.*, 611 S.W.2d 333 (Mo.App.1980). Sampson recognized, for the first time, a common law form of dramshop liability for serving intoxicants to a minor who later injured himself. In 1981, Sampson's holding was extended to claims by injured third parties. *Nesbitt v. Westport Square, Ltd.*, 624 S.W.2d 519 (Mo.App.1981). In 1983, the Missouri Court of Appeals, Eastern District, relied on *Sampson* and *Nesbitt* to find a duty in tavern owners to refrain from serving intoxicated patrons and impose liability for injuries resulting from a breach of that duty. *Carver v. Schafer*, 647 S.W.2d 570 (Mo.App.1983).

In *Carver* the court found that § 311.310, which makes it a misdemeanor to "sell, vend, give away or otherwise supply any intoxicating liquor ... to any person intoxicated or appearing to be intoxicated ..." was indicative of Missouri public policy. *Id.* at 575. The court reasoned that under the general law of torts, "[e]very person is required to take ordinary

care against injuries reasonably to be anticipated," and that the public policy of Missouri "is expressed even more fundamentally in the law of torts." *Id.* at 575. The court determined that "the well-documented foreseeability of accidents caused by drunken drivers and the statutory policy expressed in § 311.310", justified the extension of liability under common law concepts to tavern owners who serve intoxicated patrons. *Id.* at 575.

On June 28, 1985, the Missouri Court of Appeals handed down the case of *Harriman v. Smith,* 697 S.W.2d 219 (Mo.App. 1985), holding that a social host could not be held liable for contributing to the intoxication of a minor whose driving led to a fatal accident. The court reasoned that although the principles of common law negligence could be extended to impose a duty on a social host, that the legislature and not the court should be the determinate of any such duty and its parameters. The court stated that "[t]he legislature is better equipped to deal with myriad considerations. The political machinery of the legislature has the requisite sophisticated tools for gathering data, conducting studies, receiving public opinion, and, finally, implementing the policy in carefully expressed and well-defined legislation." The court expressed concern with, among other considerations, the recognition of intoxication, the predictability of the conduct of an intoxicated person and the imposition of a duty of inquiry.

Shortly thereafter, the Missouri legislature responded to the pronouncement of the public policy of Missouri by the court in *Carver, Sampson* and *Nesbitt* by the passage of § 537.053, RSMo 1986 (effective September 28, 1985), which expressly abrogated the holding of those cases. Additionally, § 537.053.2 provides that "the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, [is] the proximate cause of injuries inflicted upon another by an intoxicated person."

In *Lambing v. Southland Corp.,* 739 S.W.2d 717 (Mo. banc 1987), the Missouri Supreme Court relied on the passage of and policy expressed in § 537.053 in declining to recognize a civil cause of action against a package liquor store proprietor who knowingly sold alcohol to an intoxicated customer which customer then fatally injured another.

If, as a general rule, one who supplies alcohol to an intoxicated person does not have a legally enforceable duty to third persons and is specifically held by legislative enactment, pursuant to § 537.053, not to have proximately caused the third parties injuries, then one who is arguably even less culpable for the injuries inflicted by an intoxicated driver similarly has no legal duty and cannot be held to have proximately caused injuries to a third party. To recognize a cause of action for negligent assistance of an intoxicated driver would result in there generally being no liability for one who, for profit, assists an intoxicated person in becoming intoxicated and yet liability existing for the actions of one who merely assists another in a situation as potentially innocent and seemingly considerate as helping a person find their car keys, locate their car in a crowded lot or coming to the aid of a stranded motorist. Such a ruling would be inconsistent with the public policy of Missouri as established by our legislature that it is the consumption of alcohol that is the proximate cause of injuries inflicted by an intoxicated person.

The trial court erred in submitting plaintiffs' claim for negligent assistance.

## II.

Appellants argue further that the trial court erred in submitting plaintiffs' dramshop claim. In this regard, appellant argues first that the holding of *Carver v. Schafer* is not applicable.

The fatal accident giving rise to this cause was April 12, 1985. This was subsequent to the February 8, 1983, holding in *Carver v. Schafer,* that tavern operators could be held responsible for negligently selling alcohol to customers who were already intoxicated. The accident was also prior to the September 28, 1985, effective date of § 537.053 which abrogated the holding in *Carver.*

The Missouri Supreme Court has twice ruled that § 537.053 will not be given retrospective effect to deny a dramshop claim which arose prior to the statute's effective date. *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d 547, 552 (Mo. banc 1987) and *Lambing v. Southland Corporation*, 739 S.W.2d at 718.

[4] As noted by the court in *Andres*, the Missouri Constitution Article I, § 13, prohibits the retrospective application of laws enacted by the legislature. Such a law is one which takes away or impairs vested rights acquired under existing laws, or creates a new duty, or attaches a new disability in respect to transactions or considerations already past. *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d at 552. The holding of the court in *Carver v. Schafer* recognized a right to hold a tavern owner liable for serving liquor to an intoxicated person. Section 537.053 cannot be employed to abrogate that right retrospectively.

To avoid any confusion herein it is further noted that the prohibition to the retrospective application of § 537.053 is inapposite to denial of plaintiff's claim of negligent assistance for the reason that a cause of action for negligently assisting an intoxicated person in the operation of a motor vehicle has not previously been recognized under Missouri law.

■ Judicial decisions are given solely prospective application only when a three-factor test is met as follows: First, the decision in question must establish a new principle of law by overruling clear past precedent. Second, the court must determine whether the purpose and effect of the newly announced rule will be enhanced or retarded by retrospective application. Third, the court must balance the interests of those who may be effected by the change in the law, weighing the degree to which parties may have relied upon the old rule and the hardship that might result to those parties from the retrospective operation of the new rule against the possible hardship to those parties who would be denied the benefit of the new rule. *Sum-ners v. Sumners*, 701 S.W.2d 720, 724 (Mo. banc 1985).

In *Lambing v. Southland Corporation*, 739 S.W.2d at 719, the Missouri Supreme Court noted that no application for transfer from the Court of Appeals to the Supreme Court was filed in *Carver v. Schafer*, but, even assuming that *Carver* was correctly decided, liability based upon the principles enunciated in *Carver* was limited to that specific cause of action, i.e., a tavern owner supplying liquor to an already intoxicated person. In *Lambing* the court held that the owner of a package liquor store could not be held liable for supplying liquor to an intoxicated person. The court reasoned that the policy expressed in § 537.053 counseled against expanding upon the cause of action recognized in *Carver*. *Lambing v. Southland Corporation*, 739 S.W.2d at 719–20. The court's refusal to expand the holding in *Carver* was in spite of the fact that the accident giving rise to the action in *Lambing* occurred after *Carver* and before the effective date of § 537.053.

The denial of plaintiff's claim for negligent assistance does not change an already established principle of law. Plaintiffs do not have a vested right in a rule of law that has never been established. On the other hand, to deny plaintiffs' dramshop claim would be to take from plaintiffs a right that was clearly established at the time their cause of action accrued.

Appellant's argument that *Carver v. Schafer* is not applicable to plaintiffs' dramshop claim is without merit.

■ Appellant's second argument in regard to the submissibility of plaintiffs' dramshop claim is that the plaintiffs failed to make a submissible case. Appellant cites *Rowe v. Farmers Insurance Co. Inc.*, 699 S.W.2d 423, 429 (Mo. banc 1985), for its holding that in Missouri every element of a case must be supported by substantial evidence. Appellant argues that the testimony of a Mr. Brzuchalski that on the evening after the accident he overheard the bartender, Ms. Muse, say that on the evening of the accident Kesler had been served a couple of drinks and then cut off because he was already drunk, was not substantial

evidence supporting plaintiffs' dramshop claim. At trial Ms. Muse denied making the statement Brzuchalski attributed to her and also denied that Kesler had been furnished any alcohol at the bowling alley on the night of the accident.

■ A prior inconsistent statement of a witness who is available for cross-examination may be used as substantive evidence in a civil trial. *Rowe v. Farmers Insurance Co.*, 699 S.W.2d at 428. Brzuchalski's statement was sufficient substantive evidence from which the jury could find that Brunswick supplied Kesler with intoxicating liquor in support of plaintiffs' dramshop claim.

### III.

In another of their points, appellants argue that the trial court erred in instructing the jury to consider aggravating circumstances when assessing plaintiffs' damages because plaintiffs did not make a submissible case of aggravating circumstances against Brunswick.

■ Aggravating circumstance damages are punitive in nature. *Blum v. Airport Terminal Services, Inc.*, 762 S.W.2d 67, 73 (Mo.App.1988). It is their purpose to punish the defendant and deter future wrongdoing. They are in that respect akin to punitive damages. Accordingly, an award for more than compensatory damages in a wrongful death case is permissible only if the decedent would have been entitled to punitive damages had he lived. *Id.*

■ In an intentional tort action, punitive damages may be awarded if the defendant's conduct is shown to be "outrageous because of defendant's evil motive or reckless indifference to the rights of others." *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989). In a negligence action, punitive damages may be awarded if the defendant "showed complete indifference to or conscious disregard for the safety of others." MAI 10.02. In *Hoover's Dairy, Inc. v. Mid–America Dairymen*, 700 S.W.2d 426, 436 (Mo. banc 1985), the Missouri Supreme Court held that "punitive damages can be awarded in a negligence action, but only when the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury."

■ Applying the standard of review as set forth supra in *Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273, the evidence was that Kesler was served a couple of drinks at the bowling alley before being cut off because of his intoxication. The bartender on duty the night in question, Ms. Muse, was advised by another that Kesler was having a hard time just trying to stand up, let alone bowl. Brunswick was aware that drunk drivers presented a serious public safety problem. Brunswick had a company policy that employees should seek avenues of alternate transportation for alcohol impaired customers if possible. Kesler drove to the bowling alley by himself and left by himself.

Approximately two hours after the accident, a laboratory test revealed that Kesler had a blood alcohol level of .27 percent, nearly three times the statutory limit of intoxication. § 577.012.1. Plaintiffs' expert witness testified that at the time of the accident, Kesler's blood alcohol level approached .31 percent. He further testified that, depending on Kesler's level of tolerance to alcohol, between the time he began drinking in the afternoon and the time of the accident, he had between twenty-one and twenty-nine drinks. The witness also testified that by the time he arrived at Gladstone Bowl, Kesler had at least sixteen drinks, which would have given him a blood alcohol level of .33 percent.

This evidence shows that Kesler was obviously and seriously intoxicated while at appellant's bowling alley where he was served intoxicating liquor. The evidence was sufficient, if believed, to show that Brunswick knew or should have known that serving Kesler intoxicating liquor when he was already seriously intoxicated presented a high degree of probability that Kesler would inflict injury upon himself or others.

It was not error for the court to submit aggravating circumstance on plaintiffs' dramshop claim.

Appellant argues additionally on the subject of aggravating circumstances that by not defining the term aggravating circumstances the trial court erred because the jury had no way of knowing what evidence to consider in connection with the aggravating circumstance instruction and the instruction provided no standard for determining the amount to be awarded.

First of all, Brunswick did not offer a definitional instruction on aggravating circumstances and, therefore, it may not now complain of the failure of the court to give such an instruction. *American Family Mutual Insurance Company v. Automobile Club Inter–Insurance Exchange*, 757 S.W.2d 304, 307 (Mo.App. 1988). Secondly, the damage instruction submitted was appropriately based on MAI 5.01 which does not include or direct a separate definition of aggravating circumstances. If an MAI instruction applies, the instruction must be given to the exclusion of all others. *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 206 (Mo. banc 1983). When MAI does not require definition of the terms, definition is not required and may be an impermissible deviation. *Hoodenpyle v. Schneider Bailey, Inc.*, 748 S.W.2d 683, 687 (Mo.App. 1988).

The jury was not left at a loss as appellant suggests because the parties had the opportunity to argue the appropriate evidence for the jury to consider in regard to damages on the basis of the instructions given.

Brunswick argues further on the issue of lack of definition of the term aggravating circumstances that the court's failure to define aggravating circumstances violated Brunswick's right to substantive due process in that they were not given notice of the conduct that could give rise to a penalty.

As pointed out in the Comments following MAI 5.01, during the instruction con-

ference the parties should discuss with the court just what damages are supported by the evidence and can properly be argued to the jury. In the event that Brunswick did not have notice of the conduct that would give rise to damages being assessed on account of aggravating circumstances it was because Brunswick did not review the matter with the court in the instruction conference and make a record of the evidence that the court would allow to be argued in support of aggravating circumstances.

The trial court did not err by instructing the jury on aggravating circumstances.

## IV.

Appellant presents one additional point that is addressed, in that it is likely to recur on remand.

Brunswick complains of the introduction of what it characterizes as gruesome and inflammatory evidence concerning the accident scene and the injuries sustained by Andra McAlister. Brunswick complains that this evidence inflamed the jury and resulted in prejudice.

Appellant objected to the introduction of numerous photographs and of statements of witnesses about the accident scene. This evidence was gruesome, but only because the accident itself was gruesome and not because of any embellishment permitted by the trial court in admitting this evidence.

A trial court may admit gruesome evidence if it believes that the probative value of the evidence outweighs any inflammatory effect that it may have. *Anderson v. Burlington Northern R. Co.*, 651 S.W.2d 176, 183 (Mo.App.1983), cert. denied, 476 U.S. 1116, 106 S.Ct. 1974, 90 L.Ed.2d 657 (1986). The trial court did not abuse its discretion in allowing the evidence of which appellant complains.

Appellant's point in relation to the court's failure to strike veniremen for cause is not addressed because it is not likely to recur. Plaintiffs' claim for negligent assistance being denied herein appellant's additional points in relation thereto

are not addressed. Furthermore, appellants' points that allege error arising out of the fact that they were sued as a joint defendant with James Kesler will not recur. Kesler has not appealed and remand for new trial is against appellants only.

The judgment of the trial court is reversed and remanded with directions that plaintiffs be granted a new trial on their claim for dramshop liability.

NUGENT, C.J., dissents in separate opinion.

WASSERSTROM, Senior Judge, concurs.

NUGENT, Chief Judge, dissenting.

I concur with the majority opinion in parts II and III and with the result reached by the majority in part IV. I must respectfully dissent, however, from part I in which the majority holds that no cause of action lies for the plaintiffs' claim of negligent assistance.

I.

As the majority correctly observes, no Missouri case has recognized a cause of action for negligently assisting a drunk driver. Nor has any Missouri court declined to recognize such a cause of action. Missouri cases do hold, however, that reasonable anticipation of danger constitutes an essential element of actionable negligence, and whether negligence exists in a particular situation depends on whether or not a reasonably prudent person would have anticipated danger and provided or guarded against it. *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo.1976) (en banc), *citing Hodges v. American Bakeries Co.*, 412 S.W.2d 157, 162 (Mo.1967) (en banc), and *Price v. Seidler*, 408 S.W.2d 815, 822 (Mo. 1966).

In support of its decision, the *Scheibel* court quoted the provisions of § 302B of the Restatement (Second) of Torts, comment e, Note D. There the Restatement provides that a reasonable person must anticipate and guard against the intentional

or criminal misconduct of a second person he brings into contact with third persons where the first person knows or should know the second person "to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct." Under the Supreme Court's decision in *Scheibel*, that statement succinctly expresses the prevailing rule of law in Missouri.

In *Scheibel* the plaintiff alleged that defendant Betty Hillis, despite knowing of Joyner's violent propensities, told him of the location of her loaded shotgun (which she kept as protection against Joyner), with the consequence that Joyner took the gun and shot plaintiff Scheibel. The court held that one has a duty " 'to prevent injury to such persons as may, within the range of reasonable probability, be exposed to injury' from an indiscreet and reckless party with a firearm." *Id.* at 288.

Ms. Goffs' making available to Mr. Kesler his car keys and his car created a situation as fraught with danger to third persons as did Ms. Hillis' making available a loaded shotgun to a violent person. Her admitted knowledge that Mr. Kesler appeared "obviously drunk" and "clearly unfit to drive" created in her a duty to exercise ordinary care in dealing with him, ordinary care constituting the legal standard by which courts generally determine whether a person has acted negligently. *Fowler v. Park Corp.*, 673 S.W.2d 749, 755 (Mo.1984) (en banc); *De Mariano v. St. Louis Pub. Serv. Co.*, 340 S.W.2d 735, 743 (Mo.1960). In this situation, especially where Ms. Goff knew of Brunswick's policy to prevent drunken patrons from driving, ordinary car required that she do nothing to aid her employer's drunken customer to enter and drive his car away after he had shown an intent to drive.

Thus, she committed a breach of her duty when, knowing the danger that Mr. Kesler would immediately pose to pedestrians and other drivers, she complied with his request for a coat hanger to unlock his car doors.[1] Nothing distinguishes this case

---

1. At trial, Ms. Goffs' friend, Debbie Yazell, contradicted her, testifying that no one accompa-

from *Scheibel, supra,* where the Supreme Court imposed on a defendant the standard of ordinary care and thus a duty not to assist another where the defendant may reasonably anticipate that such assistance will expose third persons to injury. Indeed, the court there, following *Charlton v. Jackson,* 183 Mo.App. 613, 167 S.W. 670, 671 (1914), found a duty "to *prevent* injury to such persons as may, within the range of reasonable probability, be exposed to injury" from an indiscreet and reckless person. (Emphasis added.)

The majority holds that the legislature's abrogation on September 28, 1985, of the dram shop keeper's liability recognized in *Carver v. Schafer,* 647 S.W.2d 570 (Mo. App.1983), signalled an end to any such liability to third parties arising from the conduct of intoxicated drivers. Therefore, the majority reasons, we may not contradict the legislatively mandated public policy by imposing upon a defendant liability for aiding an intoxicated driver to drive.

Under the common law, a dram shop keeper could not be held liable for injuries to third persons caused by an intoxicated person to whom the shop keeper had furnished alcoholic drinks. *Parsons v. Jow,* 480 P.2d 396, 397 (Wyo.1971); *Garcia v. Hargrove,* 46 Wis.2d 724, 176 N.W.2d 566, 568 (1970); *Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656, 657 (1965); *Belding v. Johnson,* 86 Ga. 177, 12 S.E. 304, 305 (1890); *Waller's Adm'r v. Collinsworth,* 144 Ky. 3, 137 S.W. 766, 777 (1911).

Section 537.053, which the majority opinion applies and construes, provides in its pertinent parts as follows:

1. Since the repeal of the Missouri Dram Shop Act in 1934 ..., it has been and continues to be the policy of this state to follow the common law of England ... to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.

2. The legislature hereby declares that this section shall be interpreted so that

the holdings in [certain] cases ... be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.

. . . .

Nothing express or implicit in the 1985 legislation supports the majority's reasoning. We must distinguish between the act of the dram shop owner "furnishing alcoholic beverages" (declared by the 1985 enactment not to constitute the proximate cause of injuries to third persons by intoxicated persons) and the totally independent act of the dram shop owner in assisting a drunk person to drive his car, in this case, indeed, to commit a crime. *See* § 577.010 (driving while intoxicated a class B misdemeanor) and § 577.012 (driving with excessive blood alcohol content a class C misdemeanor).

The majority opinion concludes from the General Assembly's abrogation of dram shop liability for *furnishing alcoholic beverages* something more than the legislation by itself justifies. The legislative readoption of the old common law dram shop rule has nothing to do with other acts of the shop keeper. If the majority opinion is correct, the following case could occur: An obviously intoxicated man enters a tavern; the bartender serves him no alcoholic beverages but does hand him a loaded shotgun although the bartender knows the man to have violent propensities. The man soon after shoots a third person. Under the majority's reasoning, the third person would have no cause of action against the bartender and the tavern owner. In the *Scheibel* case, according to the majority's view, had defendant Hillis operated a dram shop when she gave Joyner access to the loaded shotgun, the dram shop rule readopted in 1985 would have shielded her from liability. Clearly, the Missouri general Assembly did not intend such an absurd result.

The problem arises not from the legislation but from the failure to recognize the

nied Mr. Kesler into the building when he returned to request the hanger. Thus, the jury could believe Ms. Yazell's testimony and from it

conclude that Ms. Goff knew that no one other than Mr. Kesler would drive his car.

distinction between furnishing drinks (deemed not to be a proximate cause) and the act of assisting a drunk to drive his car on the highway. Whether or not the latter conduct proximately caused injury to the third party is essentially a question of fact and should be left to the jury.

One cannot deny that in the nature of things both the furnishing and the consumption of alcoholic beverages cause the consumer to misbehave. The question becomes one of proximity or remoteness of the causation, not whether causation existed. For various policy reasons, some good and some questionable, the old common law and the recent legislation concur in declaring that, in any event, the furnishing of alcoholic beverages constitutes only a remote cause that will not support liability. That notion has nothing to do with plaintiff's claim of negligent assistance.

The majority has not demonstrated that the legislative abrogation of dram shop liability necessitates or even hints at a denial of a negligent assistance claim based upon helping a drunk to drive. Assuming arguendo that the legislature indeed silently intended to preclude that type of liability, the majority's argument nevertheless fails for want of logical consistency. In *Lambing v. Southland Corp.*, 739 S.W.2d 717, 718–19 (Mo.1987) (en banc), the Supreme Court held that the legislative abrogation did not apply retrospectively and thus, if the accident had occurred between February 8, 1983, and September 28, 1985, an action for dram shop liability would lie. In following *Lambing*, the majority correctly reasons that since Ms. McAlister's collision occurred on April 12, 1985, nearly six months before the abrogation of dram shop liability, an action under the dram shop rule would lie. Thus, in addressing the issue of dram shop liability, the majority has, as it must under *Lambing*, recognized and adhered to the public policy existing during the short-lived Camelot of dram shop liability in Missouri. If, as the majority supposes, the abrogation of the dram shop liability established a new public policy, as it certainly did, it became effective on the date of its enactment, September 28, 1985, not before.

In addressing the separate issue of negligent assistance, however, the majority views the question from the time period that began when the legislature abolished dram shop liability. The majority has placed itself in two time periods when addressing two issues arising from the same incident but does not explain why we should view the two liability questions from the standpoint of different time periods. In effect, the majority has denied retrospective application of the abrogation of dram shop liability when addressing the dram shop keeper's liability for furnishing alcoholic beverages, but has allowed that abrogation to apply retrospectively as applied to liability based on a distinct and separate theory of negligent assistance. Neither logic nor the law will tolerate that.

II.

I concur with the majority's result, but not with its reasoning in Point IV. The majority answers Brunswick's argument that the trial court erred in receiving into evidence gruesome photographs of the accident scene with the notion, now prevalent in Missouri decisions, that "[t]he photographs were gruesome because the accident was gruesome." This answer, however, begs the fundamental question raised: Does the probative value of the evidence outweigh its inflammatory effect? If it does, then, gruesome or not, the court in its discretion may admit the photographs. Otherwise, the trial court must exclude the evidence. *Anderson v. Burlington N.R.R. Co.*, 651 S.W.2d 176, 183 (Mo.App.1983), *cert. denied*, 476 U.S. 1116, 106 S.Ct. 1974, 90 L.Ed.2d 657 (1986). *See also Dudeck v. Ellis*, 399 S.W.2d 80, 96 (Mo.1966). Reviewing courts must never abandon, as they seem poised to do, their duty to review evidentiary questions regarding the admission of photographs. To do so would entail the abandonment of a bedrock principle of our jurisprudence: that triers of fact must base their decisions not upon passion or emotion but upon unimpaired reason.

For example, courts may receive into evidence photographs of a person's injuries when they help explain how the injury occurred or serve some other necessary ex-

planatory purpose. *Gooch v. Avsco, Inc.,* 337 S.W.2d 245, 252 (Mo.1960); *Golian v. Stanley,* 334 S.W.2d 88, 94 (Mo.1960). Where, however, photographs show gross disfigurement, *Anderson, supra,* or embellish the injury, *Faught v. Washam,* 329 S.W.2d 588, 600 (Mo.1959), trial judges must exclude them.

Here, the photographs did not accentuate the condition of the cars after the wreck. They resemble photographs seen daily in newspapers. Indeed, they could not conceal the terrible impact of the accident. The front half of Ms. McAlister's car resembled an accordion and the photographs demonstrated that the impact must have caused the steering wheel in her car to crush her. The photographs of the car did nothing to embellish the scene, and Judge Hutcherson correctly excluded truly horrific photographs of Ms. McAlister's body after the wreck. The admitted photographs served a reasonable explanatory purpose, and thus the trial court did not err in admitting them.